1  Joseph M. Pleasant, Esq. (State Bar Number 179571)
   jpleasant@reeselawgroup.com
2  3168 Lionshead Avenue
   Carlsbad, CA 92010
3  Telephone 760.842.5850x220
   Attorney for defendants REESE LAW GROUP, APC
4

5  Susan M. Benson, Esq. (State Bar Number 146837)
   sbenson@bensonlegal.net
6  Benson Legal APC
   6345 Balboa Boulevard, Suite 365
7  Encino, CA 91316
   (818) 708-1250
8  Attorneys for Defendants REESE LAW GROUP, APC

9

10                    UNITED STATES DISTRICT COURT

11

12        EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

13  ANGELA J. DIAZ,                          Case No. 2:19-cv-00995-MCE-CKD

14                          Plaintiff        **DEFENDANT REESE LAW GROUP'S**
15  v.                                       **NOTICE OF SPECIAL MOTION TO**
                                             **STRIKE**
16  REESE LAW GROUP
                                             Date: July 25, 2019
17                          Defendant.       Time:  2:00 P.M
                                             Hon. Honorable Morrison C. England, Jr.
18                                           Courtroom: 7

19

20       Please take notice that on the date, time and Courtroom set forth above located at 501 I Street,

21  Sacramento, CA 95814, Defendant REESE LAW GROUP will move to strike Count II (Violation of the

22

23  Rosenthal Act) of plaintiff's complaint under California Code of Civ. Proc. §425.16 (California's Anti-

24  SLAPP statute).  Said motion will be based upon this notice, a memorandum of points and authorities

25

26

27

28
                                              1

   NOTICE OF SPECIAL MOTION TO STRIKE              Case No. 2:19-cv-00995-MCE-CKD

1    and the declarations of James Delaney and Michael Campbell.

2    DATED: June 18, 2019                          BENSON LEGAL APC

3

4                                                  /s/ Susan M. Benson

5
                                                   _____
6                                                  Susan M. Benson, Esq. for Defendants
                                                   REESE LAW GROUP, APC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            2

Joseph M. Pleasant, Esq. (State Bar Number 179571)
jpleasant@reeselawgroup.com
Reese Law Group, APLC
3168 Lionshead Avenue
Carlsbad, CA 92010
Telephone 760-842-5850
Attorneys for Plaintiff REESE LAW GROUP, APLC

Susan M. Benson, Esq. (State Bar Number 146837)
sbenson@bensonlegal.net
Benson Legal APC
6345 Balboa Boulevard, Suite 365
Encino, CA 91316
Telephone (818) 708-1250
Attorneys for Defendant REESE LAW GROUP, APC

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA,

SACRAMENTO DIVISION

| | |
|---|---|
| ANGELA J. DIAZ, | Case No. 2:19-cv-00995-MCE-CKD |
| Plaintiff, | **DEFENDANT REESE LAW GROUP'S SPECIAL MOTION TO STRIKE AND MEMORANDUM OF POINTS & AUTHORITIES** |
| v. | |
| REESE LAW GROUP, | |
| Defendant | Date: July 25, 2019<br>Time: 2:00 P.M<br>Hon. Honorable Morrison C. England, Jr.<br>Courtroom: 7 |

Defendant, REESE LAW GROUP ("Reese") moves to strike Count II of plaintiff's complaint (Violation of the Rosenthal Act) under California Code of Civil Procedure § 425.16 based upon the following points and authorities.

Date:  June 18, 2019

By: /s/ Susan Benson
Susan Benson, Esq.
for Defendant REESE LAW GROUP

# TABLE OF CONTENTS

MEMORANDUM OF POINTS & AUTHORITIES .................................................................... 1

I.   INTRODUCTION ................................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................................... 1

    A.   Diaz defaults on her credit card with Wells Fargo .................................................... 1

    B.   Reese receives the account, reviews it and sends a demand letter ............................ 1

    C.   Diaz sues Reese alleging collection law violations ................................................... 3

    D.   Wells Fargo files its collection action against Diaz .................................................. 3

III. PLAINTIFF'S ROSENTHAL CLAIM IS SUBJECT TO CALIFORNIA'S
ANTI-SLAPP LAW ............................................................................................................. 3

    A.   California's anti-SLAPP law was enacted to protect fundamental constitutional
rights and is to be construed broadly ......................................................................... 3

    B.   Anti-SLAPP motions may challenge state claims in federal court ............................ 4

    C.   The anti-SLAPP law requires a two-step analysis .................................................... 5

IV.  STEP 1: REESE ENGAGED IN A PROTECTED, LITIGATION RELATED
ACTIVITY ........................................................................................................................... 5

V.   STEP 2: DIAZ CANNOT MEET HER BURDEN OF SHOWING A PROBABILITY
OF PREVAILING .................................................................................................................. 6

    A.   The factual allegations ............................................................................................... 7

    B.   The state theories incorporating federal statutes ....................................................... 7

        i.   The failure to include a required disclosure claim is
contradicted by plaintiff's evidence ................................................................. 8

        ii.  The failure to conduct a meaningful review claim is
unsupported by any evidence ............................................................................ 8

    C.   The Rosenthal claim is barred by the litigation privilege ........................................ 17

i

1

2

3

4

VI.    CONCLUSION .................................................................................................................. 18

**TABLE OF AUTHORITIES**

5

**CASES**

6   *Baral v. Schnitt (2016)* 1 Cal.5th 376 ..................................................................................... 4, 5

7   *Boon v. Professional Collection Consultants* (2013) 978 F.Supp.2d 1157 ................................... 18

8   *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106 ............................... 4, 6

9   *Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446 ............................................................................ 7

10  *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873 ........ 6

11  *Hilton v. Hallmark Cards* (9th Cir.2010) 599 F.3d 894 ................................................................ 4

12  *Knoell v. Petrovich* (1999) 76 Cal. App. 4th 164 ........................................................................ 17

13  *Larmour v. Campanale* (1979)  96 Cal. App. 3d 566 ................................................................. 18

14  *Lerette v. Dean Witter Org., Inc.,* (1976) 60 Cal. App. 3d 573 ................................................... 18

15  *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8 ....................................................................... 5

16  *Malin v. Singer* (2013) 217 Cal.App.4th 1283 ............................................................................ 6

17  *Navellier v. Sletten* (2002) 29 Cal.4th 82 ..................................................................................... 5

18  *Neville v. Chudacoff* (2008) 160 CA4th 1255 .............................................................................. 5

19  *Rubin v. Green* (1993) 4 Cal. 4th 1187 ....................................................................................... 17

20  *Seltzer v. Barnes* (2010) 182 CA4th 953 ..................................................................................... 5

21  *Silberg v. Anderson* (1990) 50 Cal. 3d 205 ................................................................................ 17

22  *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068 ...................................................... 7, 10

23  *Simpson Strong-Tie Company v. Gore* (2010) 49 Cal.4th 12 ......................................................... 5

24  *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049 ...... 4

25  *Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904 ......................................................... 11

26

27

28

*United States ex rel. Newsham v. Lockheed Missiles & Space Company, Inc.* (9th Cir.1999)
  190 F.3d 963 ........................................................................................................................... 4

*Varian Medical Systems v. Delfino* (2005) 35 Cal.4th 180 ....................................................... 4, 5

**STATUTES**

California Civil Code §47 ...................................................................................................... 17, 18

California Civil Code §1788.17 ............................................................................................ 7, 8, 18

California Code of Civil Procedure § 425.16 ......................................................... 3, 4, 5, 6, 7, 17

Title 15 U.S.C. §1692e ............................................................................................................. 7, 8

Title 15 U.S.C. §1692f ............................................................................................................. 7, 8

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

### I.    INTRODUCTION

3

4

5

6

7

Plaintiff, Angela Diaz ("Diaz") has filed an action against Reese Law Group ("Reese") alleging Reese violated state and federal debt collection laws by sending a demand letter to her on behalf of its client, Wells Fargo, in an attempt to collect a debt.  Reese challenges her state claim through this special motion to strike based upon the following.

8

### II.    FACTUAL BACKGROUND

9

10

11

#### A.    Diaz defaults on her credit card with Wells Fargo

Plaintiff has admitted that she obtained a line of credit through Wells Fargo, fell behind on her payments and is currently in default. (Complaint ¶¶10-11). Wells Fargo thereafter sent the file to Reese to collect this debt. (Complaint ¶12) (Delaney decl. ¶ 17).

12

13

14

#### B.    Reese receives the account, reviews it and sends a demand letter

15

16

17

18

19

20

21

22

23

24

On May 1, 2019, Reese received Diaz' account from Wells Fargo for the purpose of collecting the subject debt. Before initiating any communication with debtors, however, Reese implements and follows various procedures to ensure there is evidentiary support for the debt and there is no legal impediment to litigation. (Delaney decl. ¶¶4-16).  On May 7, 2019, attorney James Delaney ("Delaney") followed these procedures by performing the firm's multi-step review of the file. (Delaney decl. ¶¶16-20).  Only after completing and documenting his review did he sign the demand letter. (Delaney decl. ¶¶16-20). He then routed the letter for scanning into the firm's record keeping system and caused it to be mailed to plaintiff. (Delaney decl. ¶¶16-20).

25

26

27

28

1

The body of the letter states:

> This law firm represents WELLS FARGO BANK, N.A.   Your file was forwarded to us for collection. The amount of your debt you owe to WELLS FARGO BANK, N.A. is $11,952.39. Please note that if a lawsuit is initiated to collect the claim amount, and if our client prevails, a judgment may be entered against you which may include not only the principal amount but also the cost of filing the lawsuit, the cost of serving the lawsuit and, when allowed by law, reasonable attorney's fees. We urge you to contact Michael Campbell, Ext. 256, a non-attorney collection assistant.
>
> Sincerely,
> /James E. Delaney, Esq/ [signed in blue ink]
> James E. Delaney, Esq.

### This Communication is from a Debt Collector
### IMPORTANT LEGAL NOTICE
### FEDERAL NOTICE

**Unless you notify us, within 30 days after receipt of this notice, that you dispute the validity of this debt or any portion thereof, the debt will be assumed to be valid. If you notify us, in writing, within the 30 day period, that the debt or portion thereof, is disputed, we will obtain verification of the debt or obtain a copy of the judgment against you and a copy of such verification of the debt or judgment will be mailed to you. If you notify us, in writing, within 30 days following receipt of this notice, we will also provide you with the name and address of the original creditor, if different from the current creditor.  This letter is an attempt to collect a debt and any information obtained will be used for that purpose.**

### CALIFORNIA NOTICE

**The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.**

2

(Delany decl. ¶20, Exhibit 1 thereto)

Ms. Diaz received this letter and attached a copy of it to her complaint. (Complaint, Exhibit A). On May 13, 2019, she called Reese and left a message for a return call. (Campbell Decl. ¶ ¶2-3). Mike Campbell, a customer service representative, returned her call. She acknowledged she received the letter and offered to pay $100.00 per month. (Campbell Decl. ¶ ¶2-3). Since that was not acceptable, she became frustrated, threatened to file for bankruptcy and terminated the call. (Campbell Decl. ¶ ¶2-3).

### C.  Diaz sues Reese alleging collection law violations

On May 31, 2019, plaintiff filed the instant action against Reese alleging violations of the Federal Fair Debt Collection Practices Act ("FDCPA") and the California Rosenthal Act ("Rosenthal Act") based on Reese's demand letter.

### D.  Wells Fargo files its collection action against Diaz.

After investigating Diaz' complaint and conferring with Wells Fargo, Reese drafted and filed Wells Fargo's lawsuit against Diaz to collect the subject debt. (Delaney Decl. ¶21).

### III.  PLAINTIFF'S ROSENTHAL CLAIM IS SUBJECT TO CALIFORNIA'S ANTI-SLAPP LAW.

Reese challenges plaintiff's Rosenthal claim through California's anti-SLAPP law.

### A.  California's anti-SLAPP law was enacted to protect fundamental constitutional rights and is to be construed broadly.

In 1992, in response to the "disturbing increase" in meritless lawsuits brought to "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," the Legislature enacted Code of Civil Procedure section 425.16 (§ 425.16), California's anti-SLAPP statute. (Stats. 1992, ch. 726, § 2.) Section 425.16 provides for a special motion to

3

strike, "a procedure for weeding out, at an early state, meritless claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (Baral).) The Legislature's objective was to provide a "quick and inexpensive method for unmasking and dismissing" such lawsuits, called SLAPPs, so they can be resolved "expeditiously." (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc*. (2004) 122 Cal.App.4th 1049, 1055-56.)   In reaction to court rulings that had interpreted the statute too narrowly, the Legislature amended the statute in 1997 to direct that it "shall be construed broadly." (Stats. 1997, ch. 271, § 1 [amending § 425.16, subd. (a)].) As the California Supreme Court explained, "'the point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights.'" (*Varian Medical Systems v. Delfino* (2005) 35 Cal.4th 180, 193 (*Varian*) [emphasis in original; citation omitted].)   Therefore, "whenever possible, [courts] should interpret the First Amendment and section 425.16 in a manner 'favorable to the exercise of freedom of speech, not to its curtailment.'" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119 (*Briggs*) [citation omitted].)

## B.   Anti-SLAPP motions may challenge state claims in federal court.

The Ninth Circuit Court of Appeals has determined that a motion under §425.16 may be brought in its district courts (*United States ex rel. Newsham v. Lockheed Missiles & Space Company, Inc*., 190 F.3d 963, 972 (9th Cir.1999), cert. denied, 530 U.S. 1203, 120 S.Ct. 2196, 147 L.Ed.2d 232 (2000)) to challenge non-federal claims. (*Hilton v. Hallmark Cards* (9th Cir.2010) 599 F.3d 894, 901).

4

1

2         **C.**     **The anti-SLAPP law requires a two-step analysis.**

3        Section 425.16 sets forth a two-step process.   First, the defendant must make a prima facie

4
5 showing that the plaintiff's cause of action arises from an act of the defendant in furtherance of the

6 right of petition and/or the right of free speech in connection with a public issue. (§ 425.16, subd.

7 (b)(1); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*); *Simpson Strong-Tie Company v.*

8 *Gore* (2010) 49 Cal.4th 12, 21.)   If the defendant makes this showing, the burden shifts to the

9
plaintiff to establish a probability of prevailing on the claims. (§ 425.16, subd. (b); *Navellier*, supra,
10
11 at p. 89.)   If the plaintiff does not meet this burden, the defendant's motion must be granted.

12 (*Varian*, supra, 35 Cal.4th at p. 192.)   If the plaintiff establishes a probability of prevailing as to

13 some, but not all, of the activity protected by section 425.16, then those allegations of protected

14
activity for which plaintiff has not shown a probability of prevailing should be struck. (See *Baral*,
15
16 supra, 1 Cal.5th at pp. 393-94, 396.).

17         **IV.**     **STEP 1: REESE ENGAGED IN A PROTECTED, LITIGATION RELATED**
                 **ACTIVITY.**
18

19        As to Reese's threshold showing, "the critical consideration is whether the cause of action is

20 based on the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002)

21 29 Cal.4th 82, 89).   In the regard, "[t]he constitutional right to petition ... includes the basic act of

22
filing litigation or otherwise seeking administrative action." (*Ludwig v. Superior Court* (1995) 37
23
24 Cal.App.4th 8, 19).   A statement or writing is "in connection with" litigation if it "relates to the

25 substantive issues in the litigation and is directed to persons having some interest in the litigation."

26 (*Neville v. Chudacoff* (2008) 160 CA4th 1255, 1266, *Seltzer v. Barnes* (2010) 182 CA4th 953, 962).

27
"Ordinarily, a demand letter sent in anticipation of litigation is a legitimate speech or petitioning
28

5

activity that is protected under section 425.16. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115, 81 Cal.Rptr.2d 471, 969 P.2d 564 [" 'communications preparatory to or in anticipation of the bringing of an action or other official proceeding' " are protected by section 425.16] (*Briggs* ).)" (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293).

> The California Supreme Court has stated that a ***prelitigation communication*** is privileged if it "***relates to litigation that is contemplated in good faith and under serious consideration***." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251) "Good faith" in this context refers to a good faith intention to file a lawsuit rather than a good faith belief in the truth of the communication. (Ibid.) Similarly, the Courts of Appeal have stated that a prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement " 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration" ' [citation]."

[emphasis added] (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887).

Accordingly, Reese's pre-litigation demand letter was clearly protected under section 425.16. It pertained to Diaz' debt to Wells Fargo. It was made in anticipation of litigation, in good faith, and in the course of moving the file towards litigation which has since been filed. (Delany Decl. ¶ 21). Accordingly, Reese has met its burden of demonstrating that its conduct was protected litigation activity covered by the anti-SLAPP statute. The burden now shifts to plaintiff to show a probability of prevailing.

## V.   STEP 2: DIAZ CANNOT MEET HER BURDEN OF SHOWING A PROBABILITY OF PREVAILING

To establish a "probability" of prevailing on a claim, a plaintiff facing a §425.16 motion must "make a prima facie showing of facts which would, if credited, support a judgment in his favor."

6

(*Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451).   A section 425.16 motion, like a summary judgment motion, "pierces the pleadings and requires an evidentiary showing." (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073).   Thus, it is plaintiff's burden to make an evidentiary showing that Reese violated Civil Code §1788.17 based upon the conduct alleged in her complaint.

### A.     The factual allegations

The only factual allegations in plaintiff's complaint pertaining to Reese's alleged misconduct are based upon sending the demand letter.   The details alleged regarding this letter are as follows.

- Reese sent a collection letter that failed to include the language "any information obtained will be used for that purpose." (Complaint ¶15)

- The letter was digitally signed by Delaney.   (Complaint ¶16)

- Delaney did not adequately review the file before sending the letter.   (Complaint ¶17).

There are no other factual allegations or details in the complaint pertaining to Reese's alleged misconduct.

### B.     The theories of liability

Plaintiff's Rosenthal claim is based upon Civil Code §1788.17 (Complaint ¶¶37-43) which incorporates certain provisions of the FDCPA.   In this regard, plaintiff alleges that sending the demand letter violated 15 U.S.C. §1692e (Complaint ¶42 ) which prohibits a debt collector from using any false deceptive, or misleading representation or means in connection with the collection of any debt, and §1692f (Complaint ¶42 ) which prohibits using an unfair or unconscionable means to attempt to collect a debt.   The Rosenthal claim is based on the same conduct incorporating these federal statutes through Civil Code §1788.17.  (Complaint ¶¶37-43 ).   Thus, to analyze the state

7

§1788.17 claim to which this motion is directed, we must analyze the federal §1692e and §1692f claims upon which that claim is based.

### i. The failure to include a required disclosure theory is contradicted by plaintiff's evidence

Plaintiff has alleged that Reese ".....deceptively failed to disclose in its dunning letter that any information obtained would be used for the purpose of debt collection" (Complaint ¶15) and that this violated §1692e because it was a false or misleading communication. While it is true that §1692e(11) requires that in the initial written communication with a debtor, the phrase "any information obtained will be used for that purpose," along with other language, must be included, the last sentence of the "federal notice" part of the letter *includes* this specific language.

> ..... This letter is an attempt to collect a debt and any information obtained will be used for that purpose.

(Delaney decl. ¶20, Exhibit 1 thereto). Astonishingly, plaintiff even attached this *one-page* letter to her complaint which *included* the required language, yet she alleged it was not included. (Complaint, Exhibit A).

In any event, plaintiff's claim Reese violated §1692e(11) fails as a matter of law because the language at issue is expressly included in the letter. Accordingly, she cannot show a probability of prevailing on this theory.

### ii. The failure to conduct a meaningful review claim is unsupported by any evidence

The complaint also alleges that Delaney failed to conduct a meaningful review of the file before sending the letter thereby making the letter misleading. The allegations that pertain to this theory are as follows.

8

16. Moreover, the letter's salutation read "Sincerely," and is digitally signed by one of Defendant's attorneys, "James E. Delaney."

17. As such, the letter represented that it was sent by Mr. Delaney after he had engaged in a meaningful review of Plaintiff's account prior to sending the letter.

18. Moreover, Defendant's collection letter is form letter based on a quick inspection of its contents and format. Therefore, only a simple cut and paste exercise is needed to change the personal information of the recipient

19. As a result of Defendant's misrepresentation regarding the extent to which an attorney reviewed the collection letter prior to sending it to Plaintiff, Plaintiff felt an undue sense of anxiety that she would be subjected to legal action if prompt payment was not made.

(Complaint ¶¶ 16-19). In sum, plaintiff concludes nothing other than the use of a short, simple letter with a digital signature means that Delaney did not conduct a meaningful review of the file before mailing it. This conclusion, however, is speculative, nonsensical and unsupported by any evidence.

To begin, neither plaintiff, nor her counsel, Mr. Wajdaw, have ever worked in Reese's office. (Delaney decl. ¶15). As such, they are not privy to Reese's procedures for different clients, its staffing, its infrastructure, the volume of work it handles for different clients, the type of work it handles for different clients, the information and evidence its clients provide, when that information is provided or how Reese allocates its resources to different clients in its review of files or any other tasks or activities or the procedures adopted to review Wells Fargo accounts. Thus, they cannot even lay a foundation about what occurred regarding the review of plaintiff's file. The only evidence to which they are privy is the demand letter itself. However, that letter says nothing about what type of review took place before it was mailed. Nothing.

9

The simplicity of the letter tells plaintiff nothing about the review that preceded it. A demand letter for this type of debt should be short and simple. If it identifies the debtor, the creditor, the account number and the amount due, and, if it includes the required state and federal disclosures, it is perfectly appropriate.

As to the digital signature allegation, even if true, likewise, that would say nothing about the extent of the file review that preceded it. The manner of signing a document is simply irrelevant. A meaningful review may or may not occur if a document is signed in ink, digitally signed, e-signed signed or not signed at all. The fact that Mr. Wajda ("Wajda") e-signed his client's complaint does not mean he failed to conduct a meaningful review of the evidence in support of his allegations.[1]

Beyond that, plaintiff cannot lay a foundation to demonstrate a digital signature was used. Neither plaintiff nor her attorney witnessed Delany sign the document. And while a pen signature is not required, that is exactly how Delany signed the letter, with a pen in blue ink. (Delaney Decl. ¶20). But even if plaintiff could lay a foundation as to this assertion, and, even if this created an issue of fact as to whether a digital signature was used, it would still not reflect on the nature of the review that preceded the signature or the mailing of the demand letter. Again, the manner in which the signature was placed on the document does not matter.

The relevant issue is whether plaintiff can meet her burden by making an *evidentiary* showing of misconduct, i.e. by providing *evidence* that Reese did not conduct a meaningful review of the file. (*Simmons v. Allstate Ins. Co.,* (2001) 92 Cal.App.4th 1068, 1073). Here, no such

---

[1] Of course there is *other* evidence that he failed to conduct a meaningful review. For example, he alleged Reese failed to include the language "any information obtained will be used for that purpose" (Complaint ¶¶30-31, 33) when it was right there in the *one-page* letter itself which he even attached to the complaint. (Complaint, Exhibit A)

10

evidence exists.  Her assertion of misconduct is based upon imagination, speculation, conjecture and guesswork.

> A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Code Civ.Proc., ss 1958, 1960.) It is axiomatic that 'an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture or guesswork.

(*Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 926).   Wishful thinking without evidence is insufficient to demonstrate a probability of prevailing.

Because Reese has met its burden of demonstrating that it was engaged in a protected activity, it has no further burden here.  Nevertheless, to demonstrate how inaccurate plaintiff's speculative allegations are, Reese explains its pre-demand letter review procedures and the infrastructure within which those procedures take place.

Beginning with the firm's infrastructure, in May of 2019, the firm employed 9 attorneys and 55 non-attorney employees to meet the work flow requirements of its various clients. (Delaney decl. ¶2).  As to Wells Fargo files, the firm had (and still has) designated attorneys who conduct pre-demand letter reviews of each account before any communication with a debtor is permitted. (Delaney decl. ¶4).  These designated attorneys are required to follow a specific review procedure and document the review process for each account before any communication with a debtor is initiated, including the sending of a demand letter.  (Delaney decl. ¶4).  That process is as follows.

First, the firm receives the account placement data from Wells Fargo electronically.  (Delaney decl. ¶6).  Upon receipt, the data is automatically imported into the case management system so that the firm can properly document and review the account.  (Delaney decl. ¶6).  A staff member retrieves the account documentation provided by Wells Fargo, matches it to the correct account based on a report generated containing the new accounts, and places it into the firm's image repository to the

11

corresponding account. (Delaney decl. ¶6). When the account has been completely set up, the firm's procedure is to have a staff member perform several "scrubs" on the account to ensure that no laws are violated before the account is even reviewed. (Delaney decl. ¶6). The consumer's personal information provided with the account from Wells Fargo is used to perform these scrubs such as the consumer's name, social security number, and if needed, date of birth. (Delaney decl. ¶6). These "scrubs" are a review of deceased records of the consumer, any filing of bankruptcy of the consumer, and a search to determine if the consumer is on active military duty. (Delaney decl. ¶6). The "scrubs" are performed on national databases such as Accurint, PACER, and the DMDC website. (Delaney decl. ¶6).

Once these scrubs are performed and no positive results are shown (i.e., the consumer is alive, the debt is not subject to a bankruptcy discharge or an active bankruptcy case, and the consumer is not on active military duty), the firm's staff will then use the data from the account to locate the correct terms & conditions identified by the client to which the account is subject and add the document to the repository. (Delaney decl. ¶7).

After the initial scrubs are performed and there are no positive hits or other issues, the firm's staff will order the appropriate demand letter from the case management system to merge the correct information of the account into the appropriate fields into the firm's demand letter template. (Delaney decl. ¶8). The process is completed through an automated software process which uses specific fields within the account file to accurately populate the template. (Delaney decl. ¶8). Once the demand letters have been printed, they are given to the reviewing attorney to perform a meaningful review of the account prior to the letter being mailed to the consumer. (Delaney decl. ¶8).

Once the demand letter is given to the assigned attorney, the attorney will begin the review process to ensure that it qualifies to proceed with sending the demand letter and potential litigation. (Delaney decl. ¶9).

12

The first step in the review process is to verify the "scrubs" were performed to ensure that the consumer is not in bankruptcy (or the debt has not been discharged), the consumer is not deceased, and the consumer is not on active military duty. (Delaney decl. ¶10). The results of these "scrubs" are imaged into the firm's image repository for each respective account. (Delaney decl. ¶10). When reviewing these "scrubs" to ensure the information is accurate, the attorney will review the last four digits of the consumer's social security number and ensure each "scrub" contains that data which confirms it was the correct consumer.   (Delaney decl. ¶10). If the "scrubs" return no positive hits, then the review continues to determine if the account is within the statute of limitations. (Delaney decl. ¶10). The date of last payment is provided by Wells Fargo and populated in the case management system. (Delaney decl. ¶10). The attorney reviews this date and if the account is within the statute of limitations, the account review continues. (Delaney decl. ¶10).

The next step is to verify the account documentation provided and match it with the data within the case management system to ensure that the correct consumer information matches the information in the documentation.   (Delaney decl. ¶11). The attorney will review the terms & conditions of the account, match them to the data provided by Wells Fargo and ensure the proper terms & conditions are present. (Delaney decl. ¶11). The terms & conditions are also reviewed to determine whether they permit the recovery of attorney fees. (Delaney decl. ¶11).

The reviewing attorney then pulls up the account statements.   (Delaney decl. ¶12). Here, the consumer's name and address on the statements are compared to the name and address in Reese's computer system to verify they match. (Delaney decl. ¶12). Then, the balance of the account in the case management system is compared with the balance on the charge off statement to verify they match as well. (Delaney decl. ¶12). The same verification is done with the account number. (Delaney decl. ¶12). Sometimes, additional documentation may be provided when available such as a letter that puts

13

the consumer on notice that the balance of debt has been accelerated. (Delaney decl. ¶12).  If that is present in the documentation, it is also reviewed to ensure it matches the data placed.  (Delaney decl. ¶12).  Once all the documentation and data have been reviewed, the demand letter is reviewed.

When reviewing the demand letter, the attorney is required to match the data on the letter which is pulled from the case management system to the data on the statements.  (Delaney decl. ¶13).  The attorney reviews the letter to ensure the proper creditor name is present, the proper balance is present, the proper account numbers are identified, the consumer's name is correct and the address to which to send the letter matches the data provided.  (Delaney decl. ¶13).  The demand letters are template letters, the language of which is not modified unless warranted by special circumstances.  (Delaney decl. ¶13).  In drafting the text of the demand letter template, Mr. Delaney and Mr. Reese vigorously researched the law and carefully drafted the template to ensure it contained the disclosures required by California and federal debt collection law.  (Delaney decl. ¶13).  The legal notices in the template do not change unless the law dictates a change.  (Delaney decl. ¶13).  The notices provided within the demand letter template have been and are still proper and in full compliance with all applicable debt collection disclosure requirements.  (Delaney decl. ¶13).

The final stage of the review process involves the reviewing attorney completing a checklist that is documented within the case management system notes. (Delaney decl. ¶14).  The checklist covers most of the review already described above to ensure that the attorney is double checking their work throughout the meaningful review process.  (Delaney decl. ¶14).  The checklist includes such things as whether the consumers are located in California, whether or not all the documentation needed to review was provided, if the scrubs have negative results, if the balance that was assigned matches the documentation, verification of the proper creditor name, verifying that the data in the documentation, the computer system and the demand letter all match, verifying the correct terms & conditions are present,

14

verifying that the account is within the statute of limitations, and verifying the entire placement data and documentation received is complete. (Delaney decl. ¶14).

Once this checklist has been reviewed and documented, the reviewing attorney then signs the demand letter, notates in the computer system that it is being placed to mail, and routes the signed letters to the administrative staff to scan and mail out. (Delaney decl. ¶15).

As to plaintiff's account, Reese received the placement on May 1, 2019. (Delaney decl. ¶17). Thereafter, the file had been set up and "scrubbed," the demand letter had been printed, and the letter had been physically forwarded to Delaney for his review. (Delaney decl. ¶17). He reviewed the account on May 7th, 2019. (Delaney decl. ¶17). To access the correct account, he input the internal Reese file number located on the demand letter into the case management system and image repository. (Delaney decl. ¶17). He reviewed the case management system and the image repository concurrently with dual monitors. (Delaney decl. ¶17). When initially reviewing the account, he began in the image repository to look at the most recent "scrubs" performed to ensure they were performed on the correct consumer by verifying the last four digits of the social security used while performing the "scrubs" and matching that data to the case management system to ensure it is the correct consumer. (Delaney decl. ¶17). All of the "scrubs" were negative, so he then notated that the scrubs were satisfactory.

He then looked for the date of last payment on the account within the case management system to ensure that the account was within the statute of limitations. (Delaney decl. ¶18). He also confirmed this by reviewing the statements provided and matching that payment date and amount to the data within the case management system. (Delaney decl. ¶18). Based on this review, he determined the account was within the statute of limitations. (Delaney decl. ¶18). The next step he performed was to review the terms & conditions of the account, ensure that the correct terms matches Wells Fargo's data, and to locate provisions within the contract that may entitle the client to recover attorney fees. (Delaney decl.

15

¶18). Once he verified that the correct terms & conditions were present and they entitled Wells Fargo to attorney fees, he notated this in the case management system. (Delaney decl. ¶18).

Next, he reviewed the account documentation provided by Wells Fargo. (Delaney decl. ¶19). He reviewed the account statements to ensure the statements matched the consumer's name, address, and account number. (Delaney decl. ¶19). He also confirmed that the daily balance placed in the case management system by Wells Fargo matched the charge off statement balance. (Delaney decl. ¶19). When all these items matched up, he notated the account. (Delaney decl. ¶19). He also reviewed the notice of balance acceleration, a letter sent to the consumer by Wells Fargo dated April 30, 2019 and likewise matched the name of the consumer, the address, the account number, and account balance to the data within the case management system. (Delaney decl. ¶19). He then notated the account in the case management system with that information. (Delaney decl. ¶19).

After ensuring all the documentation and data were correct for the consumer, he then reviewed the demand letter and its contents. (Delaney decl. ¶20). He looked at the letter to ensure the consumer's name was correct. (Delaney decl. ¶20). He then confirmed that the address on the demand letter was the address provided by Wells Fargo and likewise the same one on the account statements and notice of balance acceleration. (Delaney decl. ¶20). He then reviewed the balance on the demand letter to ensure that it was the proper balance by matching it to the charge off statement balance as well as the balance that is updated daily by Wells Fargo within the firm's case management system. (Delaney decl. ¶20). He confirmed that the correct creditor name was present on the demand letter and that it did not have any other potential errors. (Delaney decl. ¶20).

Only after completing this lengthy review did Delaney sign the demand letter with a pen in blue ink at his desk. (Delaney decl. ¶20). He then notated the file and routed the signed letter to be scanned and mailed to the debtor. (Delaney decl. ¶20).

16

1   Accordingly, plaintiff's allegations that there was no meaningful review of the account are

2   based upon pure speculation that in no way reflect the lengthy review that took place. These review

3   procedures are extensive, clearly meaningful, and include verification of all relevant information

4   pertaining to the account for purposes of proceeding with a demand letter and a lawsuit. In

5   
6   reviewing plaintiff's account, Delaney followed those procedures and documented the results in

7   accordance with Reese's mandatory policies and procedures. The account was then processed for

8   litigation and a lawsuit was drafted and filed.

9
        ### C.     The Rosenthal claim is barred by the litigation privilege.
10

11      Moreover, because Reese was engaged in litigation related conduct, it is protected from

12   liability based on the litigation privilege under California Civil Code §47. California courts and the

13   California legislature have long recognized that the contents of any pleading – as well as any

14   communications made during *or in connection with* judicial proceedings – are absolutely privileged,

15   
16   and may not form the basis of any subsequent claim against the speaker. "For well over a century,

17   communications with 'some relation' to judicial proceedings have been absolutely immune from tort

18   liability by the privilege codified as section 47(b)." (*Rubin v. Green* (1993) 4 Cal. 4th 1187, 1193).

19   Civil Code section 47 provides in relevant part, "A privileged publication or broadcast is one made: .
20
21   . . (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding

22   authorized by law . . . ." See Cal. Civ. Code § 47(b). The principal purpose of the privilege is "to

23   afford litigants and witnesses the utmost freedom of access to the courts without fear of being

24   harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal. 3d 205, 213).

25   
26      The privilege is not limited to statements made within the confines of judicial actions. It also

27   "has been broadly construed to apply to demand letters and prelitigation communications by an

28

Defendant's Memorandum of Points & Authorities

attorney." (*Knoell v. Petrovich* (1999) 76 Cal. App. 4th 164, 171) (privilege barred claim based on statements made in attorney's demand letter); see also *Rubin*, 4 Cal. 4th at 1194-95 (statements in attorneys' pre-litigation notice of intent to sue were protected by the privilege); (*Larmour v. Campanale*) (1979) 96 Cal. App. 3d 566, 569 (attorney's demand letter held privileged); (*Lerette v. Dean Witter Org., Inc.,* (1976) 60 Cal. App. 3d 573, 577-78).

In this regard, the 2013 Southern District Court case of *Boon v. Professional Collection Consultants* (2013) 978 F.Supp.2d 1157 held that a claim brought under Cal. Civ. Code §§ Sections 1788, et seq. (the Rosenthal Act) based on litigation activity was barred by Section 47(b).

## VI.   CONCLUSION

Reese has met its burden of showing that its litigation-related conduct is subject to the anti-SLAPP statute.   The burden has now shifted to plaintiff to establish, with admissible evidence, that Reese failed to include the required disclosure in the demand letter (the first theory), and, that Reese also failed to conduct a meaningful review before mailing the demand letter (the second theory). She cannot meet this burden.   As to the first theory, the language at issue was expressly included in the letter. As to her second theory, neither she, nor her attorney, are privy to Reese's procedures, staffing, work-loads, infrastructure or anything else that takes place within its office and the letter itself does not support any inference one way or another about the nature or extent of any review that preceded its mailing.   Beyond that, while it is not Reese's burden to provide evidence that it conducted a meaningful review, it has provided such evidence for purposes of demonstrating how plaintiff's speculative allegations are completely off the mark.   Lastly, the litigation privilege is an additional bar to the Rosenthal claim.   Accordingly, Reese's special motion to strike should be granted, the Rosenthal claim should be stricken and Reese should be awarded its costs and attorney

18

fees pursuant to Cal. Code of Civ. Proc. Sec. 425.16(c) to be established in a separate motion for attorney fees.

Respectfully submitted.

Date:   June 6, 2019

By: /s/ Susan Benson, Esq.
Susan Benson, Esq.
for Defendant REESE LAW GROUP

19

1  Joseph M. Pleasant, Esq. (State Bar Number 179571)
   jpleasant@reeselawgroup.com
2  3168 Lionshead Avenue
   Carlsbad, CA 92010
3  Telephone 760.842.5850
   Attorney for defendants REESE LAW GROUP, APC
4

5  Susan M. Benson, Esq. (State Bar Number 146837)
   sbenson@bensonlegal.net
6  Benson Legal APC
   6345 Balboa Boulevard, Suite 365
7  Encino, CA 91316
   (818) 708-1250
8
   Attorneys for Defendants REESE LAW GROUP, APC
9

10

11       UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA,

12                            SACRAMENTO DIVISION

13
   ANGELA J. DIAZ,                          Case No. 2:19-cv-00995-MCE-CKD
14
                        Plaintiff           **DECLARATION OF JAMES
15                                          DELANEY IN SUPPORT OF
       v.                                   SPECIAL MOTION TO STRIKE**
16
   REESE LAW GROUP,
17
                        Defendant
18

19

20       I, James Delaney, declare I am an attorney licensed to practice law in the State of California and

21  am employed by defendant Reese Law Group ("RLG").

22
         1. I have been with the firm since 2012 when I was hired as a law clerk and then later as a
23
   compliance officer prior to becoming an attorney. After becoming an attorney, the firm hired me in that

24  capacity as well in which I have worked for several years. I have since been promoted to management,

25  serve as an officer for the corporation, primarily engage in management activities, but still perform some

26

27  legal work for the firm as needed. Specifically, over the past few years one of my primary roles has been

28

                                              1
   DECLARATION OF JAMES DELANEY

overseeing the compliance department at RLG. My current duties include, but are not limited to, working with clients and other attorneys and personnel in the firm to help manage, develop and implement the firm's operational procedures so that RLG conforms with its' clients' standards and the law.    Under the supervision of the owner of the firm, Harlan Reese, Esq., who has been a debt collection attorney in California for over thirty (30) years, we have developed and/or approved procedures to ensure compliance with the law and client standards since I assumed that role. Compliance is taken very seriously at RLG and is a firm priority. For purposes of this motion, I specifically was involved with and helped develop and implement the firm's compliance procedures with regard debt collection laws to the extent the firm handles cases subject to those laws.

2.   Over the last few years, RLG's staff has ranged from 40 to 65 employees.   In May of 2019, RLG has employed 9 attorneys 55 non-attorney staff members.   RLG maintains staffing based upon the needs and work flow requirements of its various clients.   One such client is Wells Fargo.

3.   Wells Fargo places credit card and similar accounts with RLG for purposes of collecting delinquent and charged-off balances on its behalf.   These files are placed with authority and direction to file litigation unless an acceptable payment arrangement is made with the customer, a legal impediment is discovered or special circumstances arise warranting reconsideration.   To give debtors that opportunity, and, to comply with state and federal collection laws, RLG sends out a demand letter before filing suit but does not make any other effort to communicate before filing unless the debtor responds to the demand letter.

4.   Certain RLG attorneys are trained on how to perform the firm's pre-demand letter and pre-litigation review procedures for Wells Fargo files.   As work flows fluctuate, the firm is able delegate the review to these specially trained attorneys to spread the work out as needed.   I am one of those attorneys that reviews Wells Fargo files and prelitigation demand letters before they are mailed out to debtors.   I

2

am also the attorney that reviewed plaintiff's account in this matter.  First, I will explain the procedure itself then I will walk through my review of plaintiff's account in this matter.

5. The procedure is as follows.

6. Procedurally, the firm receives the account placement data from Wells Fargo electronically. Upon receipt, the data is automatically imported into the case management system so that the firm can properly document and review the account.   A staff member retrieves the account documentation provided by Wells Fargo, matches it to the correct account based on a report generated containing the new accounts, and places it into the firm's image repository to the corresponding account.  When the account has been completely set up, the firm's procedure is to have a staff member perform several "scrubs" on the account to ensure that no laws are violated before the account is even reviewed.  The consumer's personal information provided with the account from Wells Fargo is used to perform these scrubs such as the consumer's name, social security number, and if needed, date of birth.  These "scrubs" are a review of deceased records of the consumer, any filing of bankruptcy of the consumer, and a search to determine if the consumer is on active military duty.  The "scrubs" are performed on national databases such as Accurint, PACER, and the DMDC website.

7. Once these scrubs are performed and no positive results are shown (i.e., the consumer is alive, the debt is not subject to a bankruptcy discharge or an active bankruptcy case, and the consumer is not on active military duty), the firm's staff will then use the data from the account to locate the correct terms & conditions identified by the client to which the account is subject and add those to the image repository.    If there is ever a potential issue with the account data or information, the account is put on hold until an investigation can be performed to properly determine the correct course of action.

8. When the initial scrubs are performed and there are no positive hits or other issues, the firm's staff will order the appropriate demand letter from the case management system to merge the correct

3

1   information of the account into the appropriate fields into the firm's demand letter template. There is no
2   copying or pasting and the process is completed through an automated software process which uses
3   specific fields within the account file to accurately populate the template. Once the demand letters have
4   been printed, they are given to the appropriate attorney to perform a meaningful review of the account
5   prior to any communication be mailed to the consumer.
6
7       9. Once the demand letter is given to the assigned attorney to the account, the attorney will begin
8   a meaningful review of the account to ensure that the account qualifies to proceed with collection.
9       10. The first step in this attorney review is to verify the "scrubs" were performed to ensure that
10  the consumer is not in bankruptcy (or the debt has not been discharged), the consumer is not deceased,
11  and the consumer is not on active military duty. The results of these "scrubs" are imaged into the firm's
12
13  image repository for each respective account.  When reviewing these "scrubs" to ensure the information
14  is accurate, the attorney will review the last four digits of the consumer's social security number and
15  ensure each "scrub" contains that data which confirms it was the correct consumer. If the "scrubs"
16  return no positive hits, then the review continues to determine if the account is within the statute of
17  limitations. The date of last payment is provided by Wells Fargo and populated in the case management
18  system. The attorney will review this date and if the account is within the statute of limitations, the
19  review continues.
20
21      11. The next step is to verify the account level documentation provided and match it with the
22  data within the case management system to ensure that the correct consumer information matches the
23
24  documentation as well as the information in the case management system. Initially, the firm will review
25  the terms & conditions of the account, match them to the data provided by Wells Fargo to ensure the
26  proper terms & conditions are present. Part of this review includes determining whether the terms &
27
28

4

conditions allow for the recovery of court costs and attorney fees when collecting upon the subject debt. Once it is confirmed that the correct terms & conditions are present, the meaningful review continues.

12. The attorney then reviews the account statements.   Here, the consumer's name and address on the statements are compared to the name and address in RLG's computer system to verify they match. Then the balance of the account in the case management system is compared with the balance on the charge off statement to verify they match. The same verification is done with the account number. Sometimes, additional documentation may be provided when available such as a letter that puts the consumer on notice that the balance of debt has been accelerated. If that is present in the documentation, it is also reviewed to ensure it matches the data placed. Once all the documentation and data have been reviewed, the demand letter is reviewed.

13. When reviewing the demand letter, the attorney is to continue matching the data on the letter to the data on the statements and within the case management system. The attorney reviews the letter to ensure the proper creditor name is present, the proper balance is present, the proper account numbers are identified, the consumer's name is correct and the address in which to send the letter matches the data provided. The demand letters are template letters, the language of which is not modified unless warranted by special circumstances.   All legal notices contained within the demand letter were vigorously scrutinized for legal compliance by myself and Mr. Reese before submitting the template to our clients for approval.  The legal notices in the template do not change unless the law dictates a change. The notices provided within the demand letter template have been and are still proper and in full compliance with California and federal debt collection disclosure requirements.

14. The final stage of the review process involves the reviewing attorney completing a checklist that is documented within the case management system notes.  The checklist covers most of the review already described above to ensure that the attorney is double checking their work throughout the

5

meaningful review process. The checklist includes such things as whether the consumers are located in California, whether or not all the documentation needed to review was provided, if the scrubs have negative results, if the balance that was assigned matches the documentation, verification of the proper creditor name, verifying that the data in the documentation, the computer system and the demand letter all match, verifying the correct terms & conditions are present, verifying that the account is within the statute of limitations, and verifying the entire placement data and documentation received is complete.

15. Once this checklist has been reviewed and documented, the reviewing attorney then signs the demand letter, notates in the computer system that it is being placed to mail, and routes the signed letters to the administrative staff to scan and mail. Neither plaintiff, nor her attorney in this matter have ever worked for RLG or been to its offices.

16. As mentioned above, I am the attorney that reviewed the account which is the subject of this action and explain the steps I took and the results of my review as follows.

17. The firm received Ms. Diaz' Wells Fargo account on May 1, 2019 for collection. On May 7th, 2019, the file had been set up and "scrubbed," the demand letter had been printed, and the letter had been physically forwarded to me for my review.   To access the correct account, I input the internal RLG file number located on the demand letter into the case management system and image repository. When reviewing the account, I reviewed the case management system and the image repository concurrently with dual monitors.  When initially reviewing the account, I began my review in the image repository to look at the most recent "scrubs" performed to ensure they were performed on the correct consumer by verifying the last four digits of the social security used while performing the "scrubs" and matching that data to the case management system to ensure it is the correct consumer.  All of the "scrubs" were negative, so I then notated the account that the scrubs are satisfactory.

DECLARATION OF JAMES DELANEY

18. Then I looked for the date of last payment on the account within the case management system to ensure that the account is within the statute of limitations. I also confirmed this by reviewing the statements provided and matching that payment date and amount to the data within the case management system. Based on this review, I determined the account was within the statute of limitations. The next step I performed was to review the terms & conditions of the account, ensure that the correct terms matches Wells Fargo's data, and to locate provisions within the contract that may entitle my client to the recovery of court costs and attorney fees. Once I verified that the correct terms & conditions were present for the account and that the terms & conditions entitled Wells Fargo to court costs and attorney fees, I notated such on the account in the case management system.

19. Next, I reviewed the account documentation provided by Wells Fargo. I reviewed the account statements to ensure the statements matched the consumer's name, address, and account number. I also confirmed that the daily balance placed in the case management system by Wells Fargo matched the charge off statement balance. When all these items matched up, I notated the account. I also reviewed the notice of balance acceleration, a letter sent to the consumer by Wells Fargo dated April 30, 2019 and likewise matched the name of the consumer, the address, the account number, and account balance to the data within the case management system. I then notated the account in the case management system with that information.

20. After ensuring all the documentation and data were correct for the consumer, I then reviewed the demand letter and its contents. As similarly stated above, I looked at the letter to ensure consumer's name was correct. I then confirmed that the address on the demand letter was the address provided by Wells Fargo and likewise the same one on the account statements and notice of balance acceleration. I then reviewed the balance on the demand letter to ensure that it was the proper balance by matching it to the charge off statement balance as well as the balance that is updated daily by Wells Fargo within the

7

firm's case management system. I confirmed that the correct creditor name was present on the demand letter and that it did not have any other potential errors. As described above, all RLG demand letter templates have the required federal and state notices that are unchanged on each demand letter as they are drawn from a template. Once all this review was performed, I signed the letter with a blue ink pen at my desk, notated the file that the demand letter was to be mailed, and handed the letter to our administrative staff to scan into our records and then mail to the consumer. A true and correct copy of the letter I signed is attached hereto as **Exhibit 1**. Documentation of my review of the file which was generated at the time I reviewed the file and is kept and maintained as a permanent record in RLG's software used in the normal course of RLG'S business and kept, maintained and relied upon as a business record is attached hereto as **Exhibit 2**.

21. Since reviewing the account, RLG has filed the Wells Fargo's collection lawsuit against Ms. Diaz. A true conformed copy of the lawsuit documents RLG received back from the Superior Court is attached hereto as **Exhibit 3**.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

DATED:  June 18, 2019

James Delaney

DECLARATION OF JAMES DELANEY

EXHIBIT 1

Harlan M. Reese, Esq.
Joseph M. Pleasant, Esq.
James E. Delaney, Esq.
Jenny R. Louro, Esq

**Reese Law Group**
**A Professional Law Corporation**
3168 Lionshead Avenue
Carlsbad, CA 92010
Telephone: (760) 842-5850
Facsimile: (760) 842-5865

Breanne L. Reese, Esq.
Golnaz Heidari, Esq.
Shiv Samtani, Esq.

May 7, 2019

ANGELA J DIAZ
1152 FRANKLIN AVE APT 23
YUBA CITY CA 95991-5348

Re: Wells Fargo Bank, N.A.
Our File Number: 561660
Claim: $11,952.39
Account Number Ending: 1936

Dear ANGELA J DIAZ:

This law firm represents WELLS FARGO BANK, N.A. . Your file was forwarded to us for collection. The amount of your debt you owe to WELLS FARGO BANK, N.A. is $11,952.39. Please note that if a lawsuit is initiated to collect the claim amount, and if our client prevails, a judgment may be entered against you which may include not only the principal amount but also the cost of filing the lawsuit, the cost of serving the lawsuit and, when allowed by law, reasonable attorney's fees. We urge you to contact Michael Campbell, Ext. 256, a non-attorney collection assistant.

Sincerely,

James E. Delaney, Esq.

## This Communication is from a Debt Collector
## IMPORTANT LEGAL NOTICE
## FEDERAL NOTICE

Unless you notify us, within 30 days after receipt of this notice, that you dispute the validity of this debt or any portion thereof, the debt will be assumed to be valid. If you notify us, in writing, within the 30 day period, that the debt or portion thereof, is disputed, we will obtain verification of the debt or obtain a copy of the judgment against you and a copy of such verification of the debt or judgment will be mailed to you. If you notify us, in writing, within 30 days following receipt of this notice, we will also provide you with the name and address of the original creditor, if different from the current creditor. This letter is an attempt to collect a debt and any information obtained will be used for that purpose.

## CALIFORNIA NOTICE

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

DWF100A



# EXHIBIT 2

| Date | User | Code | Description | Amount |
|------|------|------|-------------|--------|
| 2019/05/07 | JGE | Dwf100a | WELLS FARGO DEMAND LTR - D1 | |
| 2019/05/07 | JGE | " | last four of account #:1936 | |
| 2019/05/07 | JGE | Pap1 | postal srch, add chng -buy | |
| 2019/05/07 | JGE | DLF | dmnd ltr&fax cvrsht to ATTY | |
| 2019/05/02 | DJO | Scan: 3 | WF Fees & Placement List | |
| 2019/05/02 | DJO | Scan: 1 | Wells Fargo Acct Prefixes | |
| 2019/05/07 | DJO | Scan: 2 | postal srch, add chng -buy | |
| 2019/05/07 | DJO | Scan: 1 | WELLS FARGO DEMAND LTR - D1 | |
| 2019/05/07 | EDI | MFileAdd | Wells Fargo Acct Prefixes | |
| 2019/05/07 | EDI | MFileAdd | WF Fees & Placement List | |
| 2019/05/07 | JDE | SS | file reviewed by management | |
| 2019/05/07 | JDE | MR | Meaningful Review by Atty | |
| 2019/05/07 | JDE | XSB | Scrubs Performed | |
| 2019/05/07 | JDE | " | No Hits:no | |
| 2019/05/07 | JDE | xRtc | Review Terms & Conditions | |
| 2019/05/07 | JDE | " | AAfs+Ct Cs INCD :y | |
| 2019/05/07 | JDE | " | Gov L, S Dakota :y | |
| 2019/05/07 | JDE | " | Arb, By Demand :y | |
| 2019/05/07 | JDE | XRS | Review STMTS No E of abuse | |

Next Diary:519 2019/06/12|RVWD?          170 2019/07/23|          134 2019/08/12|

[F1] Add Note     [Ctrl+F12] Call Screen     [F6] Print     [F7] Attachments     [F8] Delete Note     [F9] Modify Note

F2 Diary     F3 WP     F4 Phone #     F5 View?     Add Paperless

[F10] Search     - Search     OK     [Esc] Close

---

| Date | User | Code | Description | Amount |
|------|------|------|-------------|--------|
| 2019/05/07 | EDI | MFileAdd | WF Fees & Placement List | |
| 2019/05/07 | JDE | SS | file reviewed by management | |
| 2019/05/07 | JDE | MR | Meaningful Review by Atty | |
| 2019/05/07 | JDE | XSB | Scrubs Performed | |
| 2019/05/07 | JDE | " | No Hits:no | |
| 2019/05/07 | JDE | xRtc | Review Terms & Conditions | |
| 2019/05/07 | JDE | " | AAfs+Ct Cs INCD :y | |
| 2019/05/07 | JDE | " | Gov L, S Dakota :y | |
| 2019/05/07 | JDE | " | Arb, By Demand :y | |
| 2019/05/07 | JDE | XRS | Review STMTS No E of abuse | |
| 2019/05/07 | JDE | JDE | 18:16 charge off statement matches name, | |
| 2019/05/07 | JDE | " | address, balance and acct num | |
| 2019/05/07 | JDE | xNoa | Review NOA | |
| 2019/05/07 | JDE | " | name add balance :y | |
| 2019/05/07 | JDE | " | last 4# acct matc:y | |
| 2019/05/07 | JDE | xAr1 | Meaningful Review Placement | |
| 2019/05/07 | JDE | " | Are Debtors in CA:y | |
| 2019/05/07 | JDE | " | All Documents Ava:y | |
| 2019/05/07 | JDE | " | Scrubs SOL,BK,D,S:y | |

Next Diary:519 2019/06/12|RVWD?          170 2019/07/23|          134 2019/08/12|

[F1] Add Note     [Ctrl+F12] Call Screen     [F6] Print     [F7] Attachments     [F8] Delete Note     [F9] Modify Note

F2 Diary     F3 WP     F4 Phone #     F5 View?     Add Paperless

[F10] Search     - Search     OK     [Esc] Close

| Date | User | Code | Description | Amount |
|------|------|------|-------------|--------|
| 2019/05/07 | JDE | JDE | 18:16 charge off statement matches name, | |
| 2019/05/07 | JDE | " | address, balance and acct num | |
| 2019/05/07 | JDE | xNoa | Review NOA | |
| 2019/05/07 | JDE | " | name add balance :y | |
| 2019/05/07 | JDE | " | last 4# acct matc:y | |
| 2019/05/07 | JDE | xAr1 | Meaningful Review Placement | |
| 2019/05/07 | JDE | " | Are Debtors in CA:y | |
| 2019/05/07 | JDE | " | All Documents Ava:y | |
| 2019/05/07 | JDE | " | Scrubs SOL,BK,D,S:y | |
| 2019/05/07 | JDE | " | Bal assgined tied:y | |
| 2019/05/07 | JDE | " | Correct Client Co:y | |
| 2019/05/07 | JDE | " | Sister State Plac:n | |
| 2019/05/07 | JDE | " | Name, SS# amt mat:y | |
| 2019/05/07 | JDE | " | T/C match Data & :y | |
| 2019/05/07 | JDE | " | stmts, Purchase, :y | |
| 2019/05/07 | JDE | " | w/i Statute of Li:y | |
| 2019/05/07 | JDE | " | Placement Package:y | |
| 2019/05/07 | JDE | xDl1 | Demand Letter Mailed | |
| 2019/05/07 | EDI | *EDIStmp | Financial Stamp via EDI | |

Next Diary:519 2019/06/12|RVWD?    |170 2019/07/23|    |134 2019/08/12|

| [F1] Add Note | [Ctrl+F12] Call Screen | [F6] Print | [F7] Attachments | [F8] Delete Note | [F9] Modify Note |
|---------------|------------------------|------------|------------------|------------------|------------------|

EXHIBIT 3

SUM-100

## SUMMONS
*(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

### NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO)*

ANGELA J DIAZ

Electronically Filed
June 13, 2019
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SUTTER
CLERK OF THE COURT
By: Brenda Johnson, Deputy

### YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE)*

WELLS FARGO BANK, N.A.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DIAS CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SUTTER
1175 Civic Center Blvd., Yuba City, CA 95993

CASE NUMBER
*(Número del Caso)* CVCM19-0001317

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
REESE LAW GROUP, Harlan M. Reese, Esq. (Bar #118226)
3168 Lionshead Avenue Carlsbad, CA 92010 760/842-5850       (File No. 561660)

| DATE: June 13, 2019 | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served
1. [✓] as an individual defendant
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

This electronic document is the official court record (GC68150)

PLD-C-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | 561660 | FOR COURT USE ONLY |
|---|---|---|
| Harlan M. Reese, Esq. (Bar #118226)<br>REESE LAW GROUP<br>3168 Lionshead Avenue<br>Carlsbad, CA 92010<br>TELEPHONE NO.: 760/842-5850   FAX NO(Optional): 760/842-5865<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): WELLS FARGO BANK, N.A. | | Electronically Filed<br>June 13, 2019<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SUTTER<br>CLERK OF THE COURT<br>By: Brenda Johnson, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SUTTER
STREET ADDRESS    1175 Civic Center Blvd.,
MAILING ADDRESS    1175 Civic Center Blvd.,
CITY AND ZIP CODE    Yuba City, CA  95993
BRANCH NAME:    COURT HOUSE EAST/CIVIL DIV
PLAINTIFF:    WELLS FARGO BANK, N.A.

DEFENDANT:    ANGELA J DIAZ

[ ] DOES 1 TO _____

| CONTRACT | | CASE NUMBER: |
|---|---|---|
| ■ COMPLAINT  [ ] AMENDED COMPLAINT (Number):<br>[ ] CROSS-COMPLAINT  [ ] AMENDED CROSS-COMPLAINT (Number): | | |
| Jurisdiction (check all that apply):<br>[X] ACTION IS A LIMITED CIVIL CASE<br>Amount demanded  [ ] does not exceed $10,000<br>  [X] exceeds $10,000 but does not exceed $25,000<br>[ ] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint<br>[ ] from limited to unlimited<br>[ ] from unlimited to limited | | CVCM19-0001317 |

1. Plaintiff*(name or names): WELLS FARGO BANK, N.A.

   alleges causes of action against defendant*(name or names):
   ANGELA J DIAZ

2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. a. Each plaintiff named above is a competent adult
   ■ except plaintiff (name): SAME AS "1" ABOVE
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity (describe):
      (3) [X] other (specify): PLAINTIFF IS A NATIONAL BANKING ASSOCIATION ORGANIZED UNDER THE NATIONAL BANKING ACT, TITLE 12 OF THE UNITED STATES CODE.
   b. [ ] Plaintiff (name):
      a. [ ] has complied with the fictitious business name laws and is doing business under the fictitious name (specify):

      b. [ ] has complied with all licensing requirements as a licensed (specify):
   c. [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.
4. a. Each defendant named above is a natural person
   [ ] except defendant (name):          [ ] except defendant (name):

      (1) [ ] a business organization, form unknown   (1) [ ] a business organization, form unknown
      (2) [ ] a corporation                            (2) [ ] a corporation
      (3) [ ] an unincorporated entity (describe):     (3) [ ] an unincorporated entity (describe):
      (4) [ ] a public entity (describe):              (4) [ ] a public entity (describe):
      (5) [ ] other (specify):                         (5) [ ] other (specify):

PLD-C-001

| SHORT TITLE:<br>WELLS FARGO BANK, N.A.   v.<br>ANGELA J DIAZ | CASE NUMBER: |
|---|---|

4.   (Continued)

   b.   The true names of defendants sued as Does are unknown to plaintiff.

      (1)   ☐ Doe defendants (specify Doe numbers): _____ were the agents or employees of the named
          defendants and acted within the scope of that agency or employment.

      (2)   ☐ Doe defendants (specify Doe numbers): _____ are persons whose capacities are unknown to
          plaintiff.

   c.   ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

   d.   ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):

5.   ☐ Plaintiff is required to comply with a claims statute, and

   a.   ☐ has complied with applicable claims statutes, or

   b.   ☐ is excused from complying because (specify):

6.   ■ This action is subject to  ■ Civil Code section 1812.10   ☐ Civil Code section 2984.4.

7.   This court is the proper court because

   a.   ☐ a defendant entered into the contract here.

   b.   ☐ a defendant lived here when the contract was entered into.

   c.   ■ a defendant lives here now.

   d.   ☐ the contract was to be performed here.

   e.   ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.

   f.   ☐ real property that is the subject of this action is located here.

   g.   ☐ other (specify):

8.   The following causes of action are attached and the statements above apply to each (each complaint must have one or
   more causes of action attached):

   ■ Breach of Contract

   ■ Common Counts

   ☐ Other (specify):

9.   ☐ Other allegations:

10.   Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

   a.   ■ damages of:  $11,952.39

   b.   ☐ interest on the damages

      (1)   ☐ according to proof

      (2)   ☐ at the rate of (specify): _____ percent per year from (date):

   c.   ■ attorney's fees

      (1)   ☐ of: $

      (2)   ■ according to proof.

   d.   ■ other (specify):
      Plus costs of suit.  Minus any payments made that have not yet been credited.  South Dakota laws apply.

11.   ☐ The paragraphs of this pleading alleged on information and belief are as follows (specify paragraph numbers):

Date: 5-12-19

Harlan M. Reese, Esq.
_____
(TYPE OR PRINT NAME)

►_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

(If you wish to verify this pleading, affix a verification.)

PLD-C-001 [Rev. January 1, 2007]

COMPLAINT—Contract

Page 2 of 2

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| WELLS FARGO BANK, N.A.   v.<br>ANGELA J DIAZ | |

**FIRST**          **CAUSE OF ACTION—Breach of Contract**
(number)

ATTACHMENT TO          ☒ Complaint          ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1.  Plaintiff *(name)*: AS STATED IN PARAGRAPH "1"

alleges that on or about *(date)*: THE DATE SET FORTH IN THE ATTACHED CONTRACT ATTACHED AS EXHIBIT 1,
a  ☒ written       ☐ oral       ☐ other *(specify):*
agreement was made between *(name parties to agreement)*: DEFENDANT AND PLAINTIFF OR PLAINTIFF'S ASSIGNOR
SET FORTH IN EXHIBIT 1.

☒ A copy of the agreement is attached as Exhibit 1, or
☐ The essential terms of the agreement       ☐ are stated in Attachment BC-1       ☐ are as follows *(specify):*

BC-2.  On or about (dates): VARIOUS DATES AFTER THE CONTRACT WERE EXECUTED
defendant breached the agreement by       ☐ the acts specified in Attachment BC-2       ☒ the following acts
*(specify)*: FAILING TO PAY AS AGREED.

BC-3.  Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused
from performing.

BC-4.  Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
☐ as stated in Attachment BC-4       ☒ as follows *(specify):* DAMAGE IN THE AMOUNT OF $11,952.39

BC-5  ☒ Plaintiff is entitled to attorney fees by an agreement or a statute
☐ of $
☒ according to proof.
BC-6  ☒ Other:
Plus costs of suit.  Minus any payments made that have not yet been credited.  South Dakota laws apply

Page _____

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) (Rev. January 1, 2007)

CAUSE OF ACTION—Breach of Contract

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

PLD-D-001(2)

| SHORT TITLE:<br>WELLS FARGO BANK, N.A.   v.<br>ANGELA J DIAZ | CASE NUMBER: |
|---|---|

SECOND _____  **CAUSE OF ACTION—Common Counts**
(number)

ATTACHMENT TO   ☒ Complaint   ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name):* AS STATED IN PARAGRAPH "1".

   alleges that defendant *(name):*

   became indebted to   ☒ plaintiff   ☐ other *(name):*

   a.   ☒ within the last four years
      (1)   ☒ on an open book account for money due.
      (2)   ☒ because an account was stated in writing by and between plaintiff and defendant in which it
             was agreed that defendant was indebted to plaintiff.

   b.   ☒ within the last   ☐ two years   ☒ four years
      (1)   ☒ for money had and received by defendant for the use and benefit of plaintiff.
      (2)   ☐ for work, labor, services and materials rendered at the special instance and request of defendant
             and for which defendant promised to pay plaintiff.
             ☐ the sum of $

             ☐ the reasonable value.
      (3)   ☒ for goods, wares, and merchandise sold and delivered to defendant and for which defendant
             promised to pay plaintiff
             ☒ the sum of $11,952.39

             ☐ the reasonable value.
      (4)   ☒ for money lent by plaintiff to defendant at defendant's request.
      (5)   ☒ for money paid, laid out, and expended to or for defendant at defendant's special instance and
             request.
      (6)   ☐ other *(specify):*


CC-2.   _____ $11,952.39 _____   which is the reasonable value, is due and unpaid despite plaintiff's demand,
        plus prejudgment interest   ☐ according to proof   ☐ at the rate of _____ percent per year
        from *(date):*
CC-3.   ☒ Plaintiff is entitled to attorney fees by an agreement or a statute
           ☐ of $
           ☒ according to proof
CC-4.   ☒ Other:
        Plus costs of suit.  Minus any payments made that have not yet been credited.  South Dakota laws apply.


Page _____
Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) (Rev. January 1, 2009)
CAUSE OF ACTION—Common Counts
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

## VERIFICATION

I, Harlan M. Reese, Esq., declare:

1.    I am an attorney at law admitted to practice before all courts of the State of California, and have my office in San Diego County, California; and am the attorney for Plaintiff in the above-entitled action.

2.    Plaintiff is unable to make this Verification because officers of Plaintiff are absent from the county in which I have my office, and for that reason, affiant makes this verification on Plaintiff's behalf.

3.    I have read the foregoing Complaint. The allegations pertaining to venue and the nature of the action are true. All other allegations are true based on information and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Verification was executed on ___6-12-19___, at Carlsbad, California.

Harlan M. Reese, Esq.

CONSUMER CREDIT CARD
CUSTOMER AGREEMENT &
DISCLOSURE STATEMENT

VISA®

**TABLE OF CONTENTS**

Your Contract With Us:    Section 1
Using Your Account:    Section 4
Changes To This Agreement:    Section 10
Fees And Interest:    Section 11
Billing Statements And Payments:    Section 19
Other Important Information:    Section 21
Arbitration:    Section 31
Your Billing Rights:    Section 32
Active Duty Military Service:    Section 33
Interpreter Certification:    Section 34
Notice To California Cardholders

To our California customers who have discussed credit card terms and conditions with us in Spanish, Chinese, Korean, Vietnamese, or Tagalog:

Read Section 34 about interpreter certification before you activate your credit card.

Lea la Sección 34 sobre certificación de intérprete antes de activar su tarjeta de crédito.

請您在啟用信用卡之前細閱第 34 節的「傳譯員認證」。

귀하의 신용카드를 활성화하시기 전에 인증에 관한 35째절을 읽으시기 바랍니다.

Hãy đọc Phần 34 về xác nhận thông dịch viên trước khi quý vị kích hoạt thẻ tín dụng của mình.

Basahin ang Seksyon 34 tungkol sa sertipikasyon ng tagapagsaling-wika bago mo i-activate ang iyong credit card.

**Your Contract With Us**

(1) Agreement. This contract for your credit card account ("Account") includes the Credit Card Agreement ("Agreement"), the Important Terms of Your Credit Card Account and future amendments to this Agreement. This Agreement is a contract between Wells Fargo Bank, N.A. and each Account holder. You and any joint Account holder accept the terms of this Agreement by using or activating your Account. Please read this Agreement carefully and keep it for your records.

**(2) Definitions**

| Annual Percentage Rate (APR) | A rate, shown as a percentage, used to calculate interest on the balance on your Account. |
|---|---|
| Billing Cycle or Billing Period | The time period between billing statements. Each billing statement shows a statement closing date which is the last day of the Billing Cycle. |
| Balance Transfer | The transfer of a balance from another credit account to your Account, including the use of a check that accesses your Account. |
| Card | Any cards we issue to you or any devices we allow you to use to access credit on your Account. |
| Cash Advance | Use of your Card to get cash. Examples include using your card for cash advances through an ATM, bank teller or Wells Fargo Online, Overdraft Protection advances, balance transfers, or cash-like purchases such as money orders, wire transfers, traveler checks, foreign currency, lottery tickets, casino chips, off-track wagers, other wagers, vouchers redeemable for cash or similar items. |
| Credit Access Device | A device, other than your Card, like SUPERCHECKS™ and mobile devices, that we allow you to use to access credit on your Account. |
| Important Terms of Your Credit Card Account | A summary of your Account's APRs, fees and other important information. |
| New Balance | The total amount you owe as of a statement closing date. |
| Outstanding Balance | The sum of all unpaid amounts, including Purchases, Cash Advances, balance transfers, interest, fees and any other amounts that you may owe us. |
| Payment Due Date | The date the Minimum Payment is due. It will be at least 25 days from the statement closing date and will be provided on your billing statement. |
| Purchase | Use of your Account to buy or lease goods or services. Cash Advances, Balance Transfers and cash-like transactions are not Purchases. Tax payments and associated fees are Purchases. |
| Credit Limit | This is the amount that is available for your use. |
| We, Us, and Our | Wells Fargo Bank, N.A. |
| | The Account holder(s) who opened the Account. |

# EXHIBIT 1

You and Your

(3) Contacting You. You agree that we have your consent to contact you at any phone number, email address, or mailing address you provide for any Wells Fargo account or at any number that you call us from or at any number that we obtain by other means. Your consent allows us and any companies working on our behalf to service your account, to use any means to contact you including: automated dialing devices, prerecorded/artificial voice messages, mail, e-mail, text messages, push notifications, and calls to your cell phone, or any other data or voice transmission technology. You are responsible for any service provider charges you may incur as a result of us contacting you by any means, whether such charges are related to text, data, equipment or other plans. You will promptly notify us if you change any contact information, including your name, mailing address, e-mail addresses, or phone numbers. If you have a joint Account, a notice to one of you will serve as a notice to both of you. We may use voice recognition technology to verify your identity when you call. We may capture and store your voiceprint for this purpose. We may monitor and record any calls between you and us.

Back to top

Using Your Account

(4) Using Your Account. You may use your consumer credit card Account for Purchases, Balance Transfers, Cash Advances and any other transactions we allow. You promise to use your Account only for lawful personal, family, or household purposes. We reserve the right to deny transactions or authorizations from merchants who may be engaging in the internet gambling business. We are not responsible for anyone who refuses to accept your Card or any other Credit Access Device. We may decline any transaction at any time. Your credit card may not be used to make a payment on any other Wells Fargo credit account.

Cash Advances from ATMs. Cash Advances from ATMs may be limited by amount or frequency. The ATM owner may have additional restrictions. If the ATM owner charges any fee, that fee will be included as part of the total Cash Advance amount.

Cash Advances for Overdraft Protection. You may elect to have an automatic Cash Advance from your Account to cover an overdraft on a linked Wells Fargo checking account. To cover an overdraft on a linked Wells Fargo checking account, we will advance the greater of

- the amount of your overdraft; or
- $25.00

Except if

- the amount of available credit on your Card is less than the amount of the overdraft or less than $25.00, we will then advance the amount of available credit.

The APR and fees that apply to overdraft protection advances are listed in the Important Terms of Your Credit Card Account. Overdraft protection advances, interest and fees may cause your Account balance to exceed your credit limit. If there is more than one person listed on the checking account (such as a joint checking account) that you have linked for overdraft protection, then:

- You will be responsible for all overdraft protection advances regardless of which person writes the check or engages in any other transaction (such as a debit card purchase) that causes the overdraft; and
- You agree to allow us to disclose to any other person on your checking account, that this Card is linked to your checking account for overdraft protection.

We reserve the right to cancel, suspend, or change your overdraft protection service at any time, for any reason

Credit Access Devices. SUPERCHECKS can be used to access your Account similar to writing a check on a deposit account. SUPERCHECKS checks will post as a balance transfer only when they are included with a Balance Transfer offer. If a SUPERCHECKS check is not included with a Balance Transfer offer it will post as a Cash Advance. They will include transaction fees and interest.

Some restrictions apply to SUPERCHECKS:

- They may not be written as payment on any Wells Fargo account.
- They may be used only by the person whose name is printed on the check.
- They must be written in U.S. dollars.
- They cannot be certified.
- You cannot file a claim against the bank when you have a dispute with a merchant about payment for property or services that you paid for using a SUPERCHECKS check.
- We reserve the right to put conditions on the use of SUPERCHECKS checks and to reject, decline and return unpaid any SUPERCHECKS check or advance at our discretion.

Third Party/Mobile Devices. You or an authorized user may be permitted to load your credit card to an app on a smart phone, tablet or other electronic device, such as, through a mobile wallet, which could be used for purchases or other transactions without presenting the card. Any such Transactions are covered by this Agreement. We have no control over the device and cannot guarantee the performance of the device.

Additionally:

- You should protect the security of the device the same as your credit card or other valuable information.
- There may be third party fees related to the transaction such as mobile carrier data or messaging charges.
- We may, at any time, partially or fully restrict your ability to make credit transactions through a third party/mobile device. You agree to notify us promptly if you remove or want to remove your Account information from any third party/mobile device.

(5) Authorized Users. If you wish to have an additional Card issued in another person's name, please contact us and we will send you a Card with the name of the authorized person embossed on the front of the Card. You are responsible for payment of the entire amount owed to us, including any Purchases, balance transfers or Cash Advances (and all related interest and fees) made by the authorized person.

Ending Authorized User Privileges. If you want to end an authorized user's privilege to use your Account, you must:

- Recover and destroy that person's Card. If you do not, you will continue to be liable for any charges made, even if you've advised us of your wish to cancel the privileges, unless you tell us to cancel all Cards and establish a new Account for you.
- You must notify us of your request by contacting us at the number on the back of your Card or by mail at Wells Fargo Bank, N.A., P.O. Box 10347, Des Moines, IA 50306

In general, an authorized person is not obligated on this Account and is not liable for any Outstanding Balance or any other charges made by you or by any other authorized person. In the event of the death of all fully liable cardholders, authorized users' privilege ends automatically. After that, if any person uses the Card, such

## EXHIBIT 1

use indicates his or her agreement to pay us, and we may, at our discretion, pursue the person for payment of any Outstanding Balance or any other charges they authorize. You agree to notify each authorized person that they are subject to all applicable sections of this Agreement.

Information about Authorized Users. You agree to give us certain personal information about each Authorized User. You must have permission from each Authorized User allowing you to give us that personal information. This may include name, address, social security number, date of birth and citizenship.

(6) Lost or Stolen Cards and Liability for Unauthorized Use. You must notify us immediately if your Card or account information is lost or stolen, or if you believe it's being used without your permission. You may contact us by phone at 800-642-4720 or in writing at Wells Fargo Card Services, PO Box 10347, Des Moines, IA 50306. You agree to assist us in our investigation of the matter. If you do this and we find you not responsible, you will not be held liable for the unauthorized use of your Account.

(7) Promise to Pay. When you use your Account or let someone else use it, you promise to pay the total amount of the Purchases, Cash Advances, and balance transfers, plus all interest, fees and other amounts that you may owe us. We may limit or close your Account, but the terms of this Agreement will apply until you pay the Account in full.

(8) Credit Limit. We may assign the following limits to your Account:

Cash Advance Limit. We may restrict the amount of your credit limit that can be used for Cash Advances.

Your total credit limit will be provided with your Credit Card and shows on each of your billing statements. You promise to use your Account only to the limits. If you exceed your total credit limit, we may allow the transaction without increasing your total credit limit or deny the transaction. If we allow the transaction, we may treat that over limit amount as due with the minimum payment on your next statement. If you exceed the limits, you will still remain liable for all credit you receive. We can adjust your credit limit at any time, including automatic credit line increases for those who qualify.

(9) Authorizations. We don't guarantee approval of transactions. We reserve the right to deny transactions for any reason, such as account default, suspected fraudulent or unlawful activity, internet gambling, or any indication of increased risk related to the transaction. If you engage in abuse, misuse or gaming in connection with earning or using points or attempt to do so, we may close or restrict your Wells Fargo credit card(s). Abuse, misuse or gaming includes, but is not limited to, making multiple purchases and multiple payments during a billing cycle whereby the dollar amount for each purchase in the aggregate substantially exceeds your credit limit. We also may limit the number of authorizations we allow during a period of time.

Transactions at some merchants (such as hotels, car rental companies, restaurants, and gas stations) may result in temporary authorizations for amounts greater than the actual Purchase amount. This will make less credit available on your Account for several days, usually until the date the actual Purchase amount is received from the merchant.

If you give your credit card information to a merchant to bill your account for recurring payments, or to keep it on file for future purchases or payments, and your card number, expiration date, or security code changes, you should notify the merchant with your new card information. Some card networks provide update services and receive updated card information from Wells Fargo. Merchants that participate in such services will receive updated card information from the network for credit cards that you have provided to the merchant for recurring or future purchases or payments. We cannot tell you which merchant will receive updated card information when your card information changes. You should always provide each merchant with your new card information because some merchants do not subscribe to such network services.

Back to top

Changes To This Agreement

(10) Change In Terms. We may change this Agreement at any time. These changes may apply to existing and future balances. We will give you advance written notice of the changes and a right to reject the changes if required by law. We may require you to close your Account or take other actions if you reject the changes.

Back to top

Fees And Interest

(11) Fees. The following fees may apply to your account. If they do apply, you will find the amount in the Important Terms of Your Credit Card Account. You agree to pay any fees that apply.

• Annual Fee. If your account has an annual fee it will be charged each year your account is open. The annual fee will not be billed after your Account is closed.
• Balance Transfer Fee. This fee may be charged on a balance transfer transaction.
• Cash Advance Fee. This fee may be charged on a Cash Advance from your Account.
• Overdraft Protection Advance Fee. This fee may be charged when an overdraft amount is advanced to the checking account linked to your Credit Card Account by you.
• Foreign Currency Conversion Fee. If you make a transaction in a foreign currency, Visa will convert it into a U.S. dollar amount. A foreign currency conversion fee may be charged when this is done.
• Late Fee. This fee may be charged each time we do not receive the required Minimum Payment due by the Payment Due Date.
• Returned Check or Returned Payment Fee. This fee may be charged when a payment is not processed the first time or is returned unpaid.
• Rush Plastic Fee. This fee may be charged if you requested expedited delivery for your credit card.

Additional fees may be charged if agreed between you and us. All fees will be added to the Purchases balance, except Cash Advance fees and Overdraft Protection fees which will be added to the Cash Advance balance on your Account.

(12) Foreign Currency Transactions.

If you make a transaction in a currency other than U.S. dollars using a Visa Card, then Visa International "Visa" will convert the charge into a U.S. dollar amount. The exchange rate between the transaction currency and the billing currency used for processing international transactions is either (a) a rate selected by Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or (b) the government-mandated rate in effect for the applicable central processing date. The currency conversion rate for the processing date may differ from the rate in effect on the date of the transaction or the date the transaction is posted to your Account.

Point of Sale Conversion. Some merchants outside the United States offer cardholders the option of having Card transactions converted to U.S. dollars by Visa, as described above, or by the merchant itself. If the latter option is chosen, the currency conversion rate is determined solely by the merchant involved in the transaction, and no foreign currency conversion fee is charged by the bank for the transaction.

(13) Rates. The following sections describe how we calculate the interest you owe each Billing Period. The Important Terms of Your Credit Card Account list the APRs

# EXHIBIT 1

that apply to different types of balances.

**Introductory Rates.** Your account may be eligible for introductory rates. This would be described in the Important Terms of Your Credit Card Account. If you are offered a promotional rate after your account is opened, the terms will be provided at that time. After any introductory or promotional rates expire, the remaining balances will be subject to the applicable Standard or Standard Variable APR terms.

**How we Calculate your Standard Variable APRs.** If your account has a variable rate the APR will vary based on the U.S. Prime Rate plus the applicable "Margin". See the Important Terms of Your Credit Card Account for the "Margin" on Purchases, balance transfers, Cash Advances, and overdraft protection advances, and daily periodic rates that apply to your Account. For each Billing Period, we use the U.S. Prime Rate or the average of the U.S. Prime Rates (if there is more than one) published in the "Money Rates" column of *The Wall Street Journal* three business days prior to your billing statement closing date. If the U.S. Prime Rate is no longer published or is not available, we may select a similar index. A change in the APR may increase or decrease the total amount of interest you pay and your Minimum Payment due. If the APR changes due to a change in the U.S. Prime Rate, the new APR will apply to both existing and future balances on the first day of your Billing Cycle. The APR will continue to vary even if your Account is closed.

**Standard APRs.** If your Account is subject to Standard APRs, the Standard APRs will not vary with the market based on the U. S. Prime Rate. However, we may change the Standard APRs from time to time in accordance with the Change In Terms information described in section 10. The rates that apply to your account are listed in the Important Terms of Your Credit Card Account.

**Daily Periodic Rates.** The daily periodic rates are calculated by dividing each applicable APR by 365.

(14) **Minimum Interest Charge.** Your account may have a Minimum Interest Charge. See The Important Terms of Your Credit Card Account for the applicable charge.

(15) **When we Charge Interest.** For most transactions, interest will be charged beginning on the date a transaction is made on your account. We charge interest on a fee beginning on the first day of the Billing Cycle following the Billing Cycle in which the fee posted to your Account.

(16) **Here's how and when specific Transactions, fees and credits are applied:**

- We add the amount of a Purchase or Balance Transfer to the Purchase balance as of the transaction date shown on your statement.
- We add Balance Transfer fees to the Purchase balance as of the transaction date shown on your statement.
- We add the amount of a Cash Advance to the Cash Advance balance as of the transaction date shown on your statement.
- We add Cash Advance Fees to the Cash Advance balance as of the transaction date shown on your statement.
- We add the amount of any Overdraft Protection advance to the Cash Advance balance as of the transaction date shown on your statement.

(17) **How we Calculate Interest.** We begin by calculating the daily balance of each Transaction category. Next we calculate the Average Daily Balance (ADB). Finally, we calculate the interest. See each section below for details.

1.    Calculating the daily balance: the daily balance is calculated separately for each Transaction category. We start with the daily balance from the end of the previous day. We add in any new Transactions and other charges, including interest accrued on the previous day's balance. This means interest is compounded daily. We then subtract any payments or credits.

Example for the Purchase Transaction category:
Daily balance for purchases from the previous day
+ New purchases
+ Fees and interest accrued on the previous day's Transaction category balance
- Payments, credits and adjustments that posted that day
= New daily balance for Purchases

2.    Calculating the Average Daily Balance (ADB): we add up all the daily balances for the Billing Cycle starting with the beginning balance of the first day of the Billing Cycle. This beginning balance will include any unpaid fees from the previous Billing Cycle and any late fees incurred during the current Billing Cycle. Any daily balance that is a credit balance is treated as zero. We divide this amount by the number of days in the Billing Cycle.

ADB = sum of daily balances ÷ number of days in the Billing Cycle

3.    Interest Calculation: we calculate the interest charge for each type of balance by applying the daily periodic rate to the ADB and multiplying this by the number of days in the Billing Cycle.

Interest Charge = daily periodic rate x ADB x number of days in Billing Cycle

(18) **Grace Period.** To avoid paying interest on new Purchases you have to pay your entire New Balance by the Due Date on your statement each Billing Period. You cannot avoid interest on Cash Advances or Balance Transfers. Your due date will be at least 25 days from the statement closing date and will be provided on your billing statement.

Back to top

**Billing Statements And Payments**

(19) **Billing Statements.** If you have a balance on your account you will receive a billing statement. Your billing statement will show your Minimum Payment due and the Payment Due Date.

(20) **Payments.** You may pay all or part of your Account balance at any time, but you must pay the Minimum Payment, disclosed on your billing statement, by the Payment Due Date.

Minimum Payment. Your Minimum Payment Due includes any amount past due plus the greater of:

1.   The sum of late, returned check, returned payment, rush plastic, and annual fees and interest billed during the Billing Cycle for which the Minimum Payment is calculated plus 1% of the New Balance shown on the billing statement; or

2.   $25.00 (or the entire balance on the Account if the New Balance is less than $25.00).

We require you to pay any amount over the limit of your credit card account. However, that amount is not included in your Minimum Payment Due.

# EXHIBIT 1

The Minimum Payment is rounded-up to the next highest whole dollar amount. Credits will not be used to meet the Minimum Payment.

Payment Instructions. Follow these instructions when making a payment:

1. You must pay in U.S. dollars.
2. Payment must be made with a personal check, money order or cashier's check and must be issued by a bank in the United States.
3. Electronic payments are accepted.
4. Do not mail cash.

If you mail your payment, please mail to the payment address provided on your billing statement using the envelope and payment coupon enclosed. Payments received by 5:00 p.m. at the location your payment is mailed to will be credited as of the date of receipt. If received after 5:00 p.m. they will be credited on the following day. Payments made through Wells Fargo Online Banking at wellsfargo.com will be credited based on the cutoff time disclosed at the time of the transaction. If you do not follow these instructions your payment may not be credited for up to five days after we receive it.

Checks or other paper documents may be converted to an electronic transaction through procedures established by the National Automated Clearing House Association. In this case, the original check or other document that you send to us will not be retained, but a copy would be available if requested.

Some of your available line of credit may be held, at our discretion, until your payment is honored.

You cannot pay this account using another Wells Fargo Bank, N.A. credit or loan account or any Wells Fargo affiliated company credit or loan account. You cannot use any SUPERCHECKS checks to make any payment on this Account.

Generally, we will apply your Minimum Payment first to lower APR balances (such as Purchases) before balances with higher APRs (such as Cash Advances). Payments made in excess of the Minimum Payment will be applied to balances with higher APRs first before balances with lower ones.

We post payments to the Billing Cycle within which they are received. Any payment in excess of the Minimum Payment due is applied based on the balances reflected on your last billing statement.

Irregular Payments. If you intend to pay your Account in full with an amount less than the Outstanding Balance, payments must be sent to: Wells Fargo, P.O. Box 10311, Des Moines, IA 50306-0311. Please note that if we accept such payments we have every right to pursue full payment.

Back to top

Other Important Information

(21) Default / Immediate Repayment of Balance in Full. Your Account will be in default, and we may require immediate payment of your total Account if:

- You fail to pay a Minimum Payment by the Payment Due Date;
- Any payment is returned;
- You don't honor the terms of this Agreement;
- You made an untrue statement on your application; OR
- You file for bankruptcy.

If this is a joint Account, a default by one of you will be a default by all of you.

We may prevent further transactions and we may close your Account and other Wells Fargo Accounts. If your account is in default you agree to pay our collection costs, attorney's fees, and court costs incurred in enforcing our rights under this agreement.

(22) Re-Verification of Credit Information. We can review any information you provided on your credit application at any time. This may include:

- Requesting credit bureau reports;
- Verifying your current credit standing;
- Verifying your employment, assets and income records.

(23) California Residents. We may also obtain information at any time from the California Department of Motor Vehicles. You agree to waive the address confidentiality requirements section of the California Vehicle Code (Section 1808.21).

This waiver may not apply to you if you are on active duty military service (including active guard or reserve service) or you are a spouse or dependent of a person who is on such active duty military service. Please see the Important Statement Concerning Active Duty Military Service section in the Agreement for more information.

(24) Cancellation. We may close your Account at any time and for any reason. You may also close the Account at any time. If that happens, you must still repay the balance owed according to the terms of this Agreement. Joint Accounts may be canceled by either Account Holder. If we close the account, notice may be provided to only one Account Holder.

(25) Separation of Unlawful Provisions. If any provision of this Agreement is found to be unenforceable, all other provisions of the Agreement will remain in effect.

(26) Enforcement Rights. We may waive or delay enforcing any of our rights without losing them. A court decree for divorce or separation or an out-of-court mutual agreement does not affect any of our rights to enforce this Agreement.

(27) Phone Monitoring. We may monitor and record any of your phone calls with us.

(28) Information Reporting. We may report information about you to consumer reporting agencies. The information that we report to consumer reporting agencies may include:

- Account history;
- Account performance;
- Account status;
- Any violations of your account; and
- Any violations of the terms of this Agreement.

# EXHIBIT 1

The same information may be reported to the consumer reporting agencies for any additional card holders. You may dispute the accuracy of the information that we report to consumer reporting agencies by writing to us at Wells Fargo Credit Bureau Dispute Resolution, P.O. Box 14517, Des Moines, IA 50306-3517. Please describe the information in detail that you believe is inaccurate and provide any supporting documents with your dispute. If your dispute relates to identity theft, you will need to provide us with an identity theft report.

(29) **Assignment.** We may assign your Account and any or all rights and obligations under the Agreement to a third party. You may not assign your Account or any of your obligations under the Agreement.

(30) **Governing Law.** Federal law and the laws of South Dakota govern this Agreement and your account.

Back to top

## Arbitration

**(31) Dispute Resolution Program: Arbitration Agreement.**

1. **Binding Arbitration.** You and Wells Fargo Bank, N.A. (the "Bank") agree that if a Dispute arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. The foregoing notwithstanding, the Bank shall not initiate an arbitration to collect a consumer debt, but reserves the right to arbitrate all other disputes with its consumer customers. A "Dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to the Card or related services, Accounts, or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access the Bank. It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims. A Dispute also includes any disagreements about the meaning or application of this Arbitration Agreement. This Arbitration Agreement shall survive the payment or closure of your Account. YOU UNDERSTAND AND AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT. As the sole exception to this Arbitration Agreement, you and the Bank retain the right to pursue in small claims court any Dispute that is within that court's jurisdiction. If either you or the Bank fails to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.
2. **Arbitration Procedure; Severability.** Either you or the Bank may submit a Dispute to binding arbitration at any time notwithstanding that a lawsuit or other proceeding has been previously commenced. NEITHER YOU NOR THE BANK SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. Each arbitration, including the selection of the arbitrator(s), shall be administered by the American Arbitration Association (AAA), or such other administrator as you and the Bank may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules"). To the extent that there is any variance between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement shall control. Arbitrator(s) must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the Dispute. No arbitrator or other party to an arbitration proceeding may disclose the existence, content, or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. You and the Bank (the "Parties") agree that in this relationship: (1) The Parties are participating in transactions involving interstate commerce; and (2) This Arbitration Agreement and any resulting arbitration are governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that Act is inapplicable, unenforceable or invalid, the laws of the state of South Dakota. If any of the provisions of this Arbitration Agreement dealing with class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, that invalid provision shall not be severable and this entire Arbitration Agreement shall be unenforceable.
3. **Rights Preserved.** This Arbitration Agreement does not prohibit the Parties from exercising any lawful rights or using other available remedies to preserve, foreclose, or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment, or the appointment of a receiver by a court of competent jurisdiction. Any statute of limitations applicable to any Dispute applies to any arbitration between the Parties. The provisions of this Arbitration Agreement shall survive termination, amendment, or expiration of the Card or any other relationship between you and the Bank.
4. **Fees and Expenses of Arbitration.** Arbitration fees shall be determined by the rules or procedures of the Arbitration Administrator, unless limited by applicable law. Please check with the Arbitration Administrator to determine the fees applicable to any arbitration you may file. If the applicable law of the state in which you opened your Account limits the amount of fees and expenses to be paid by you, then no allocation of fees and expenses to you shall exceed this limitation. Unless inconsistent with applicable law, each of us shall bear the expense of our own attorney, expert and witness fees, regardless of which of us prevails in the arbitration.
5. **Active Duty Military Service.** If you are on active duty military service (including active guard or reserve service) or you are a spouse or dependent of a person who is on such active duty military service, then the above Arbitration Agreement may not apply to you. Please see Important Statement Concerning Active Duty Military Service in this Agreement for more information.

Back to top

## Your Billing Rights

Keep This Notice For Future Use. This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**(32) What To Do If You Find a Mistake on Your Statement.** If you think there is an error on your statement, write to us at:

    Wells Fargo Card Services
    P.O. Box 522
    Des Moines, IA 50306-0522

In your letter, give us the following information:

- Your name and Account number;
- The date and dollar amount of the suspected error.
- If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing at the address above. You may notify us using other ways (including telephone), but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

What Will Happen After We Receive Your Letter.

# EXHIBIT 1

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us. If we do not follow all of the rules above, you do not have to pay the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases.** If you are dissatisfied with the goods or services that you have purchased with your credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the Purchase.

To use this right, all of the following must be true:

1. The Purchase must have been made in your home state or within 100 miles of your current mailing address, and the Purchase price must have been more than $50. (Note: Neither of these are necessary if your Purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the Purchase. Purchases made with Cash Advances from an ATM or with a check that accesses your credit card Account do not qualify.
3. You must not yet have fully paid for the Purchase.

If all of the criteria above are met and you are still dissatisfied with the Purchase, contact us in writing at:

Wells Fargo Card Services
PO Box 522
Des Moines, IA 50306-0522

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

Back to top

**Active Duty Military Service**

(33)  IMPORTANT STATEMENT CONCERNING ACTIVE DUTY MILITARY SERVICE: If you are on active duty military service when you apply for or establish this account (including active guard of reserve service) or you are a spouse or dependent of a person who is on such active duty military service at that time, then so long as such active duty military service continues, the Arbitration Agreement contained in the Credit Card Agreement does not apply to you, nor do any provisions that waive any right to legal recourse under any state or federal law.

MILITARY ANNUAL PERCENTAGE RATE: Federal Law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the costs of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the cost associated with credit insurance premiums, fees for ancillary products sold in connection with the credit transaction, any application fee charged (other than certain application fees for specified credit transactions or accounts), and any participation fee charged (other than certain participation fees for a credit card account).

You may contact us at 1-844-309-0044 for information about the Military Annual Percentage Rate and a description of your account opening disclosures.

Back to top

Interpreter Certification

## (34) Interpreter Certification. If you choose to discuss your credit card account with us in Spanish, Chinese, Korean, Vietnamese, or Tagalog, please read the following.

By signing, using or activating the credit card issued to you, you certify to us that:

- You have discussed the Customer Agreement and Disclosure Statement with your interpreter and have been given the opportunity to discuss and negotiate with us the terms and conditions contained in these documents.
- Your interpreter is at least 18 years old and is fluent in both English and in the language in which you chose to discuss with us the terms and conditions of your credit card Account.
- You understand and agree to the terms and conditions contained in these enclosed documents.

## Certificación de Intérprete

(34)  Certificación de Intérprete. Si usted opta por conversar sobre su cuenta de tarjeta de crédito con nosotros en español, chino, coreano, vietnamita o tagalo, lea lo siguiente.

# EXHIBIT 1

Al firmar, utilizar o activar la tarjeta de crédito emitida a su nombre, usted certifica ante nosotros que:

- Usted ha analizado el Contrato del Cliente y Declaración de Divulgación con su intérprete, y que usted y su intérprete han tenido la oportunidad de analizar y negociar con nosotros los términos y condiciones contenidos en estos documentos.
- Su intérprete tiene por lo menos 18 años de edad y habla con fluidez tanto en inglés como en el idioma que usted haya elegido para conversar con nosotros sobre los términos y condiciones de su Cuenta de tarjeta de crédito.
- Usted entiende y está de acuerdo con los términos y condiciones contenidos en estos documentos adjuntos.

## 翻譯員認證

(34) 翻譯員認證。如果您選擇以西班牙語、中文、韓語、越南語或菲律賓律與我們討論信用卡帳戶相關事宜，請閱讀以下內容。

一旦您簽署、使用或啟用根發給您的信用卡，即表示您向我們證明

- 您已經與您的翻譯員討論過《客戶協議》與《披露聲明》，並且有讓會與我們討論和協商這些文件中的條款和條件。
- 您的翻譯員至少年滿 18 歲，並具有流利的英語能力且能就所選與我們討論您的信用卡帳戶和條件的語言。
- 您理解並同意遵守所附這些文件中的條款和條件。

## 통역사 인증

(34) 통역사 인증. 통역사 인증. 귀하의 신용카드 계좌에 관한 사항을 스페인어, 중국어, 한국어, 한국어, 베트남어 또는 타갈로그어로 저희와 논의하기로 하신 경우, 다음 사항을 읽어 주십시오

귀하에게 발급된 신용카드를 사용하거나 활성화함으로써, 귀하는 저희에게 다음 사항을 증명하게 됩니다

- 귀하는 귀하의 통역사와 함께 고객 동의서 및 공개 진술서에 관한 논의하였으며 이러한 문서에 포함된 약관을 저희와 논의하고 협상할 기회를 가졌습니다
- 귀하의 통역사는 18세 이상이며 영어뿐만 아니라 귀하가 신용카드 계좌 약관에 관해 저희와 논의할 때 사용하시기로 선택하신 언어에 모두 능통합니다
- 귀하는 첨부된 이러한 문서에 포함된 약관을 이해하였으므로 이에 동의합니다

## Xác Nhận Về Người Thông Dịch

(34) Xác Nhận Về Người Thông Dịch Nếu quý vị chọn thảo luận trương mục thẻ tín dụng của mình với chúng tôi bằng tiếng Tây Ban Nha, tiếng Trung, tiếng Hàn, tiếng Việt hoặc Tagalog, vui lòng đọc phần sau đây.

Bằng việc ký, sử dụng hoặc kích hoạt thẻ tín dụng đã cấp cho quý vị, quý vị chứng nhận với chúng tôi rằng:

- Quý vị đã thảo luận với thông dịch viên của mình về Thỏa Thuận Khách Hàng và Tuyên Bố Tiết Lộ Thông Tin và đã có cơ hội trao đổi và thương lượng với chúng tôi về các điều khoản và điều kiện nêu trong những tài liệu này.
- Thông dịch viên của quý vị tối thiểu 18 tuổi và thông thạo cả tiếng Anh lẫn ngôn ngữ mà quý vị đã chọn sử dụng để thảo luận với chúng tôi về các điều khoản và điều kiện liên quan đến trương mục thẻ tín dụng của quý vị.
- Quý vị hiểu và đồng ý với các điều khoản và điều kiện được nêu trong những tài liệu đính kèm này.

## Sertipikasyon ng Tagapagsaling-wika

(34) Sertipikasyon ng Tagapagsaling-wika. Kung pipiliin mong talakayin ang iyong credit card account sa amin sa wikang Spanish, Chinese, Korean, Vietnamese, o Tagalog, pakibasa ang sumusunod.

Sa pamamagitan ng paglagda, paggamit o pag-activate ng credit card na ibinigay sa iyo, pinatototohanan mo sa amin na:

- Tinalakay mo ang Kasunduan ng Kostumer at ang Pahayag ng Pagsisiwalat sa iyong tagapagsaling-wika at nabigyan ka ng pagkakataong talakayin at makipagkasundo sa amin sa mga tuntunin at kundisyong nilalaman ng mga dokumentong ito.
- Ang iyong tagapagsaling-wika ay wala pang 18 taong gulang at lubos na marunong sa Ingles at sa wika na napili mo para talakayin sa amin ng mga tuntunin at kundisyon ng iyong credit card Account.
- Nauunawaan at sinasang-ayunan mo ang mga tuntunin at kundisyong nakasaad sa mga nakalakip na dokumentong ito.

Wells Fargo Card Services
PO Box 10347, Des Moines, IA 50306
1-800-642-4720
Hearing and Speech Impaired Customers, call the TTY number 1-800-419-2265.

Back to top

Core 01/19

M-12113B
LS 9216

# EXHIBIT 1

This electronic document is the official court record (GC68150)

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number and address): | 561660 | FOR COURT USE ONLY |
|---|---|---|
| Harlan M. Reese, Esq. (Bar #118226) | | |

REESE LAW GROUP
3168 Lionshead Avenue
Carlsbad, CA 92010
TELEPHONE NO.: 760/842-5850          FAX NO. (760) 842-5865
ATTORNEY FOR (Name): WELLS FARGO BANK, N.A.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SUTTER
STREET ADDRESS:      1175 Civic Center Blvd.,
MAILING ADDRESS:    1175 Civic Center Blvd.,
CITY AND ZIP CODE:   Yuba City, CA  95993
BRANCH NAME:         COURT HOUSE EAST/CIVIL DIV.

CASE NAME:     WELLS FARGO BANK, N.A.   v.
               ANGELA J DIAZ

Electronically Filed
June 13, 2019
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SUTTER
CLERK OF THE COURT
By: Brenda Johnson, Deputy

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CVCM19-0001317 |
|---|---|---|---|---|
| ☐ Unlimited (Amount demanded exceeds $25,000) | ☒ Limited (Amount demanded is $25,000 or less) | ☐ Counter      ☐ Joinder | | |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: | |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☒ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☐ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): 2
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 6-12-19

Harlan M. Reese, Esq.
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action to assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) (if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability (not asbestos or
   toxic/environmental) (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) (not civil
   harassment) (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      (not medical or legal)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract (not unlawful detainer
      or wrongful eviction)
   Contract/Warranty Breach–Seller
      Plaintiff (not fraud or negligence)
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage (not provisionally
   complex) (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property (not eminent
      domain, landlord/tenant, or
      foreclosure)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   (arising from provisionally complex
   case type listed above) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment (non-
      domestic relations)
   Sister State Judgment
   Administrative Agency Award
      (not unpaid taxes)
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified
   above) (42)
   Declaratory Relief Only
   Injunctive Relief Only (non-
      harassment)
   Mechanics Lien
   Other Commercial Complaint
      Case (non-tort/non-complex)
   Other Civil Complaint
      (non-tort/non-complex)
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition (not specified
   above) (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

This electronic document is the official court record (GC68150)

REESE LAW GROUP
Harlan M. Reese, Esq. (Bar #118226)
3168 Lionshead Avenue
Carlsbad, CA 92010
760/842-5850

Electronically Filed
June 13, 2019
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SUTTER
CLERK OF THE COURT
By: Brenda Johnson, Deputy

Attorneys for Plaintiff,
WELLS FARGO BANK, N.A.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SUTTER

### COURT HOUSE EAST/CIVIL DIV.

| | |
|---|---|
| WELLS FARGO BANK, N.A. | Case No.   CVCM19-0001317 |
| Plaintiff, | DECLARATION OF VENUE |
| v. | |
| ANGELA J DIAZ , | |
| Defendant(s) | |

I am one of the attorneys of record for plaintiff. The following information is known to me personally and if called to testify I could and would be willing to do so. This Court is the proper venue because:

☐ The contract entered into or to be performed in this judicial district. The address where contract entered into or to be performed is:

_____          _____
                Street                                                      City, Zip Code

☑ At least one defendant resides in this judicial district. The address of the defendant is:

1152 FRANKLIN AVE APT 23                          YUBA CITY CA 95991-5348
                Street                                                      City, Zip Code

This action is subject to:        ☑ Civil Code section 1812.10        ☐ Civil Code section 2984.4.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Date:  6-12-19

_____
Harlan M. Reese, Esq.
Attorney for Plaintiff

DECLARATION OF VENUE

1   Joseph M. Pleasant, Esq. (State Bar Number 179571)
    jpleasant@reeselawgroup.com
2   3168 Lionshead Avenue
    Carlsbad, CA 92010
3   Telephone 760.842.5850
    Attorney for defendants REESE LAW GROUP, APC
4

5   Susan M. Benson, Esq. (State Bar Number 146837)
    sbenson@bensonlegal.net
6   Benson Legal APC
    6345 Balboa Boulevard, Suite 365
7   Encino, CA 91316
    (818) 708-1250
8
    Attorneys for Defendants REESE LAW GROUP, APC
9

10

11              UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA,

12                              SACRAMENTO DIVISION

13

14   ANGELA J. DIAZ,                           Case No. 2:19-cv-00995-MCE-CKD

15                      Plaintiff              **DECLARATION OF MICHAEL**
                                               **CAMPBELL IN SUPPORT OF**
16   v.                                        **SPECIAL MOTION TO STRIKE**

17   REESE LAW GROUP,

18                      Defendant

19

20          I, Michael Campbell, declare I am over the age of 18 and have personal knowledge of the

21   following facts.

22
            1. I am employed as a customer service representative with Reese Law Group ("Reese"). My
23

24   current duties include, among other things, fielding calls from debtors who receive demand letters and

25   discussing settlement options.

26          2. My employer maintains a data base in its computer system with a file for each case in the

27   firm's inventory. Regarding the handling of phone calls, I am required to document them. Specifically,
28

                                               1

     DECLARATION OF MICHAEL CAMPBELL

1    once a phone call is terminated, I am required to summarize the conversation in our computer system so

2    we have a permanent record of the substance of the call. To refresh my recollection of my conversation

3    with plaintiff in this matter, I pulled up her file and reviewed my notes which refreshed my recollection

4    of my conversation with her.  A true and correct copy of an image of the computer screen documenting

5    the call which I used to refresh my recollection is attached hereto as **Exhibit 1**.  The call took place on

6

7    May 13, 2019.  She had called in and left a message, so I returned her call.

8        3. She acknowledged that she had received the demand letter. After verifying her identity and

9    advising her I was a debt collector we discussed her account.  She offered to pay $100.00 per month until

10   the balance of the account was paid in full.  I did not have authority to accept that offer but was willing

11   to discuss other arrangements after having a chance to confer with the client. However, she became

12

13   frustrated, made a comment about filing for bankruptcy and hung up on me.

14       I declare under penalty of perjury under the laws of the State of California and the United States

15   of America that the foregoing is true and correct.

16

17

     DATED: June 11, 2019
18

19

20                                          Michael Campbell

21

22

23

24

25

26

27

28

                                                    2
     DECLARATION OF MICHAEL CAMPBELL

EXHIBIT 1



561660 | Priority Calls | Tags | Docs

| Date | User | Code | Description | Amount |
|------|------|------|-------------|--------|
| 2019/05/13 | MCA | " | Phone Type: Possible Call Phone | |
| 2019/05/13 | MCA | " | Carrier: NEW CINGULAR WIRLESS | |
| 2019/05/13 | MCA | " | Carrier Region. MARYSVILLE, CA | |
| 2019/05/13 | MCA | xTalk | SUMMARY OF CALL        RETURNED VM TO CONSUMER, | |
| 2019/05/13 | MCA | " | 530-300-7288 - RCVD OUR DL. VFD LAST 4 SSN AND | |
| 2019/05/13 | MCA | " | ADDR. ADVSD DEBT COLL. CONSUMER OFFERED $100 | |
| 2019/05/13 | MCA | " | MONTH UNTIL PIF. INFORMED CONSUMER WILL HAVE A | |
| 2019/05/13 | MCA | " | RESPONSE FROM WF WITHIN 1 WK. CONSUMER | |
| 2019/05/13 | MCA | " | RESPONDED "SO WHAT YOU ARE TELLING ME IS THAT I | |
| 2019/05/13 | MCA | " | SHOULD FILE BK?" INFOMRED CONSUMER THAT I DIDNT | |
| 2019/05/13 | MCA | " | IN ANY FORM IMPLY SHE SHOULD FILE BK. CONSUMER | |
| 2019/05/13 | MCA | " | HUNG UP. | |
| 2019/05/13 | EDI | *EDIStmp | Financial Stamp via EDI | |
| 2019/05/13 | EDI | *EDIStmp | Financial Stamp via EDI | |
| 2019/05/13 | EDI | *EDIStmp | Financial Stamp via EDI | |
| 2019/05/13 | MFE | Scan: 1 | AP1 | |
| 2019/05/14 | EDI | *EDIStmp | Financial Stamp via EDI | |
| 2019/05/15 | EDI | MFileAdd | AP1 | |
| 2019/05/15 | EDI | MFileAdd | postal srch add chng -buy | |

Next Diary: 2 2019/06/06|        20 2019/06/16|        161 2019/10/29|

[F1] Add Note        [Ctrl+F12] Call Screen        [F6] Find        [F7] Attachments        [F8] Delete Note        [F9] Modify Note

1    Joseph M. Pleasant, Esq. (State Bar Number 179571)
     jpleasant@reeselawgroup.com
2    3168 Lionshead Avenue
     Carlsbad, CA 92010
3    Telephone 760.842.5850x220
     Attorney for defendants REESE LAW GROUP, APC
4

5    Susan M. Benson, Esq. (State Bar Number 146837)
     sbenson@bensonlegal.net
6    Benson Legal APC
     6345 Balboa Boulevard, Suite 365
7    Encino, CA 91316
     (818) 708-1250
8    Attorneys for Defendants REESE LAW GROUP, APC

9

10

11                        UNITED STATES DISTRICT COURT

12         EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

13   ANGELA J. DIAZ,                         Case No. 2:19-cv-00995-MCE-CKD

14                        Plaintiff          **PROOF OF SERVICE**

15   v.

16   REESE LAW GROUP

17                        Defendant.

18

19

20        I, the undersigned, declare as follows:  I am over the age of eighteen years and not a party to this

21   case.  I am employed in the County of Los Angeles, California, where the mailing occurs.  My business

22   address is 6345 Balboa Boulevard, Suite 365 Encino, CA 91316.  I am readily familiar with our

23   business' practice of collecting, processing and mailing of correspondence and pleadings for mail with

24   the United States Postal Service and sending correspondence through email.

25        On the date below, I served the following documents described as:

26

27

28

                                            1
PROOF OF SERVICE                                    Case No. 2:19-cv-00995-MCE-CKD

1

- **DEFENDANT REESE LAW GROUP'S NOTICE OF SPECIAL MOTION TO STRIKE**

2

- **DEFENDANT REESE LAW GROUP'S SPECIAL MOTION TO STRIKE AND MEMORANDUM OF POINTS & AUTHORITIES**

3

- **DECLARATION OF JAMES DELANEY IN SUPPORT OF SPECIAL MOTION TO STRIKE**

4

- **DECLARATION OF MICHAEL CAMPBELL IN SUPPORT OF SPECIAL MOTION TO STRIKE**

5

6

On the interested parties in this action

7

Via U.S. Mail:

8

NICHOLAS M. WAJDA (State Bar #259178)

9

WAJDA LAW GROUP, AFC

11400 West Olympic Boulevard, Suite 200M

10

Los Angeles, California 90064

11

And via email at:                    nick@wajdalawgroup.com

12

13

14

Electronically by transmitting this document via email to the attorneys listed above at their emails listed

15

above and by US postal service by depositing the same in a sealed envelope and addressed as shown

16

above with postage fully prepaid with the US Postal service.  I declare under penalty of perjury under the

17

laws of the State of California and the laws of the United States of America that the foregoing is true and

18

19

correct.

20

Executed on _June 27,_ 2019 in Encino California.

21

22

23

Denise Cardenas

24

25

26

27

28

2